**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN DONALD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:17-cv-02372-CDP |
| VECTOR MARKETING CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT
OR IN THE ALTERNATIVE STAY THE ACTION PENDING ARBITRATION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT........................................................................................................................ 4

POINT I   PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS
CLAIMS AGAINST VECTOR ................................................................. 4

    A.   The Arbitration Provision is An Enforceable and Valid Agreement
to Arbitrate ...................................................................................... 5

        1.   The parties manifested an intent to be bound by the Arbitration
Provision................................................................................... 5

        2.   The terms are sufficiently definite to compel arbitration
of plaintiff's wage claims......................................................... 8

        3.   Adequate consideration exists to enforce the Arbitration
Provision...................................................................................10

    B.   Arbitration Must Be Compelled On An Individual Basis ..................10

POINT II   PLAINTIFF WAIVED HIS RIGHT TO PURSUING HIS CLAIMS IN
COURT .......................................................................................11

POINT III   THE COMPLAINT SHOULD BE DISMISSED OR IN THE
ALTERNATIVE THE ACTION SHOULD BE STAYED........................12

CONCLUSION ..................................................................................................133

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. __, 133 S. Ct. 2304 (2013)......................................................................................10

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009).................................................................................................................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................................................................4, 10

*Bailey v. Ameriquest Mortg. Co.*,
346 F.3d 821 (8th Cir. 2003) ...................................................................................................5

*Berkley v. Dillard's Inc.*,
450 F.3d 775 (8th Cir. 2006) ...................................................................................................9

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)...................................................................................................10

*Bray v. United Ins. Co. of America*,
No. 14-CV-01390, 2014 WL 6389569 (E.D. Mo. Nov. 14, 2014)........................................12

*Cellular Sales of Missouri LLC v Nat'l Labor Relations Bd.*,
824 F.3d 772 (8th Cir. 2016) .................................................................................................10

*Dodds v. Pulte Home Corp.*,
909 A.2d 348 (Pa. Super. Ct. 2006)........................................................................................6

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,
S.A.A.*,
269 F.3d 187 (3d Cir. 2001)......................................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................................................................5

*Griswold v. Coventry First LLC*,
762 F.3d 264 (3d Cir. 2014).....................................................................................................6

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*,
296 F.3d 982 (10th Cir. 2002) ...............................................................................................12

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*,
589 F.3d 917 (8th Cir. 2009) .................................................................................................11

*Katz v. Gerardi*,
   655 F.3d 1212 (10th Cir. 2011) ..................................................................................12

*Lyster v. Ryan's Family Steak House, Inc.*,
   239 F.3d 943 (8th Cir. 2001) ......................................................................................9

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ...................................................................................11

*Norton v. AMISUB St. Joseph Hosp.*,
   155 F.3d 1040 (8th Cir. 1998) ...................................................................................11

*Owen v. Bristol Care, Inc.*,
   702 F.3d 1050 (8th Cir. 2013) ................................................................................9, 10

*Peerless Publ'ns, Inc. v. Cnty. of Montgomery*,
   656 A.2d 547 (Pa. Commw. Ct. 1995), *appeal denied,* 668 A.2d 1141 (Pa.
   1995) ...........................................................................................................................9

*Petrie v. Haddock*,
   119 A.2d 45 (Pa. 1956) ...............................................................................................6

*PRM Energy Systems, Inc. v. Primenergy, L.L.C.*,
   592 F.3d 830 (8th Cir. 2010) .......................................................................................7

*Randazzo v. Anchen Pharmaceuticals, Inc.*,
   No. 12-CV-999, 2012 WL 5051023 (E.D. Mo. Oct. 12, 2012) .................................12

*Schwartz v. Comcast Corp.*,
   256 F. App'x 515 (3d Cir. 2007) .................................................................................5

*Sims v. EQT Corp.*,
   No. 13-CV-1235, 2014 WL 4384593 (W.D. Pa. Sept. 4, 2014) .................................5

*Smay v. E.R. Stuebner, Inc.*,
   864 A.2d 1266 (Pa. Super. Ct. 2004) ..........................................................................8

*Soroko v. Atmos, Inc.*,
   No. 11-CV-6120, 2015 WL 5585350 (E.D. Pa. Sept. 23, 2015) .............................6, 9

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) ......................................................................................6, 8

*Vanover v. NCO Financial Services, Inc.*,
   857 F.3d 833 (11th Cir. 2017) ..................................................................................12

*White v. Nat'l Football League*,
   92 F. Supp. 2d 918 (D. Minn. 2000) ...........................................................................8

**Statutes**

9 U.S.C. § 2.................................................................................................................................4

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*........................................................................1

Federal Arbitration Act, 9 U.S.C. §§ 1-14.....................................................................................4

Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq.* ..................................................1

National Labor Relations Act .......................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Justin Donald asserts in this action a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and an individual claim under the Missouri Minimum Wage Law ("MWL"), Mo. Rev. Stat. § 290.500 *et seq.*  The complaint[1] alleges that Vector Marketing Corporation ("Vector"):  (1) failed to properly pay and misclassified him and others similarly situated as independent contractors, in violation of the FLSA (Count I); and (2) failed to properly pay him for time he allegedly worked, in violation of the MWL (Count II).

Vector now moves to compel plaintiff to arbitrate his claims pursuant to an arbitration agreement between the parties that requires them to arbitrate "any dispute of any kind" between them, including statutory claims for wages.  Moreover, plaintiff waived his right to pursue his claims in court by voluntarily asserting other covered claims in arbitration before commencing this action.  By bringing this action plaintiff is attempting to get out from under his agreement to arbitrate and waste the Court's resources by impermissibly splitting his claims between arbitration and court.  The Court should refuse to allow plaintiff to do so.

## STATEMENT OF FACTS

Plaintiff alleges that Vector is "a direct sales company that sells kitchen cutlery and accessories throughout the nation, including St. Louis County."[2]  Matheson Dec., Ex. 9, ¶ 8

---

[1] Because it was filed originally in state court, plaintiff stylized his case opening document as a "petition" but this memorandum will refer to it using this court's preferred title of "complaint."

[2] The facts based on the allegations in the complaint are accepted as true for purposes of this motion only.

[hereinafter, "Complaint ¶ __").[3] Plaintiff alleges that for the past twelve years he has worked as a Division Manager for Vector in St. Louis County. Complaint ¶ 12. Plaintiff alleges that Division Managers like himself "oversee a specific geographic sales area, including several of Vector's district and branch offices." Complaint ¶ 9. Plaintiff alleges that Vector improperly classified him and other Division Managers as independent contractors, rather than employees, and as a result failed to properly pay him minimum wage and overtime in violation of the FLSA and MWL. Complaint ¶¶ 29-37.

From at least September 2014 to approximately mid-January 2017, plaintiff provided services to Vector as a Division Manager for the area known as the Gateway Division that includes the state of Missouri. Matheson Dec. ¶ 4. A Division Manager, among other things, oversees the recruitment, training, and motivation of sales representatives in his or her area. *Id.* Plaintiff performed his services as a Division Manager from 2014 to 2017 under three separate Independent Contractor Division Manager Agreements entered into by and between Vector and The JWD Group, L.L.C. ("JWD"). *Id.* at ¶ 4, Exs. 1, 2 and 3. JWD is a Missouri limited liability company that is solely owned and operated by plaintiff. *Id.* at ¶ 5, Ex. 1, first ¶. When completing all three Independent Contractor Division Manager Agreements plaintiff wrote his name (Justin Donald) on the lines in the signature block next to the words "DVM Name (Please print)" and affixed his signature on the lines next to the words "DVM Signature." *Id.* at ¶ 6, Exs. 1, 2 and 3.

The relationship between Vector and plaintiff and JWD ended in early 2017. The parties dispute who ended the relationship. *Id.* at ¶ 7.

---

[3] All references to "Ex." are to exhibits attached to the Declaration of Paul Matheson, dated September 14, 2017 (hereinafter "Matheson Dec.").

On or about May 19, 2017, Vector received a demand letter from the law firm of Carmody MacDonald on behalf of plaintiff and JWD alleging, among other things, that Vector had materially breached the 2016-17 Agreement, and demanding that Vector pay plaintiff $600,000 that he allegedly would have received if he had continued to provide services to Vector under the 2016-17 Agreement. *Id.* at ¶ 8, Ex. 4.

The Independent Contractor Division Manager Agreement for the period May 1, 2016 through August 31, 2017 ("2016-17 Agreement") contains a broad arbitration provision, that provides in relevant part as follows:

> The DVM [Division Manager] and Vector further agree that if any dispute of any kind arises between them which they are unable to resolve themselves, they will submit such dispute to binding, individual, non-class/non-representative/non-collective arbitration as their sole and exclusive remedy. By agreeing to arbitration, both parties understand and agree that any dispute between them will be resolved by a neutral third person outside of court and that they are waiving their rights to sue in a court of law and to have a jury trial regarding such disputes. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, liquidated damages, civil penalties, attorney fees or any other right or remedy under state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not including claims which are excluded from arbitration by applicable state or federal law.

*Id.* at ¶ 9, Ex. 4 ¶ 12 ("Arbitration Provision").

Accordingly, in response to the demand letter, Vector filed a demand for arbitration with JAMS demanding that, pursuant to the Arbitration Provision, plaintiff and JWD submit their claims to arbitration. *Id.* at ¶ 10, Ex. 5. Plaintiff and JWD responded to the demand for arbitration by filing a counterclaim against Vector in the JAMS arbitration proceeding on July 7, 2017, alleging, among other things, that Vector breached the 2016-17 Agreement and as a result owes JWD $600,000. *Id.* at ¶ 11, Ex. 6. The counterclaim of

plaintiff and JWD filed in the JAMS arbitration proceeding asserts claims for breach of contract and tortious interference with business expectancy on behalf of JWD (Counts I and II) and defamation on behalf of plaintiff individually.  *Id.*, Ex. 6.

Vector filed a response to the arbitration counterclaim of plaintiff and JWD on July 19, 2017.  *Id.* at ¶ 13, Ex. 7.

On July 21, 2017, JAMS appointed the Hon. Geraldine Soat Brown (Ret.) to serve as the arbitrator in the arbitration, pursuant to the parties' mutual agreement.  *Id.* at ¶ 14, Ex. 8.  Counsel for both Vector and plaintiff/JWD then appeared telephonically at a preliminary conference on August 31, 2017.  *Id.* at ¶ 11.  As a result of that conference Judge Brown issued a scheduling order.  *Id.* at ¶ 16, Ex. 10.

## ARGUMENT

### POINT I

**PLAINTIFF SHOULD BE COMPELLED
TO ARBITRATE HIS CLAIMS AGAINST VECTOR**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, governs the enforcement of written contracts evidencing a transaction involving commerce.  9 U.S.C. § 2.  Section 2 of the FAA provides, in relevant part, as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contact.

*Id*.  This language reflects a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).  The

validity of a contract to arbitrate is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A plaintiff should be compelled to arbitrate his claims where there is a valid agreement to arbitrate and where the "specific dispute at issue falls within the substantive scope of that agreement." *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 822 (8th Cir. 2003) (internal quotations and citations omitted) (reversing trial court and compelling FLSA claims to arbitration).

**A.     The Arbitration Provision is An Enforceable and Valid Agreement to Arbitrate**

The Independent Contractor Division Manager Agreement states that it "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania," Ex. 3, ¶ 9, and, therefore, Pennsylvania law applies in determining its validity.[4]  Under Pennsylvania law, courts consider the following in determining if a valid arbitration agreement exists: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Sims v. EQT Corp.*, No. 13-CV-1235, 2014 WL 4384593, at *6-7 (W.D. Pa. Sept. 4, 2014) (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007)).

**1.     The parties manifested an intent to be bound by the Arbitration Provision**

The 2016-17 Agreement is two pages in length and contains an arbitration clause in paragraph 12 that appears in the same type face as the other clauses in it.  The Arbitration Provision consists of three paragraphs that clearly set forth the requirement that the parties arbitrate their disputes.  The last sentence of the 2016-17 Agreement states: "IN WITNESS

---

[4] The Scheduling Order issued by Judge Brown in the arbitration proceeding notes that pursuant to ¶ 9 of the 2016-17 Agreement "the governing substantive law is that of the Commonwealth of Pennsylvania." *See* Matheson Dec., Ex. 10 ¶ 3 (APPLICABLE LAW).

WHEREOF, both parties sign and agree to all the terms as described above, on the effective date noted below." Immediately following that sentence Vector and plaintiff affixed their signatures. Under Pennsylvania law, "[a] party's signature to a contract is designed to evidence his intention to be bound thereby." *Petrie v. Haddock*, 119 A.2d 45, 47 (Pa. 1956). These facts demonstrate that plaintiff and Vector intended to be bound by the Arbitration Provision. *See Soroko v. Atmos, Inc.*, No. 11-CV-6120, 2015 WL 5585350, at *4 (E.D. Pa. Sept. 23, 2015) (finding under similar facts that the parties had manifested an intention under Pennsylvania law to be bound by an arbitration clause).

Vector anticipates that plaintiff may attempt to argue that he is not bound by the Arbitration Provision because the 2016-17 Agreement was between Vector and JWD and not him personally. Any such argument would be specious under the circumstances. Even if it is assumed, arguendo, that plaintiff did not intend to be bound individually when he signed the 2016-17 Agreement, "a non-signatory may be bound by an arbitration agreement if 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Pennsylvania law allows a non-signatory to be bound to an arbitration agreement "when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006). A non-signatory will also be compelled to arbitrate where "the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995)).

- 6 -

*See also PRM Energy Syst., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010) (discussing the bases under which the federal courts will bind a non-signatory to an agreement to arbitrate, including the existence of a close relationship between the signatory and non-signatory and a close relationship between the parties and claims that are intertwined).

Here, a sufficiently close nexus exists between plaintiff and JWD and between plaintiff and Vector to bind plaintiff to the Arbitration Provision. JWD is plaintiff, plain and simple. Plaintiff is the sole owner and operator of JWD. *See* Matheson Dec. at ¶ 5, Ex. 1, first ¶ ("THIS AGREEMENT, effective September 2014 between VECTOR MARKETING CORPORATION, . . . and THE JWD GROUP, LLC . . ., solely owned and operated by Justin Donald (Principal) . . . (Here after collectively 'DVM.'"). The services that JWD provided to Vector were provided personally and solely by plaintiff. Although it is only JWD that asserts a claim for breach of the 2016-17 Agreement in the arbitration, any damages awarded to JWD in the arbitration will flow directly to plaintiff. Plaintiff and JWD are represented by the same counsel and the initial demand letter presented to Vector demanded that the $600,000 in damages that JWD now seeks in the arbitration be paid not to JWD, but to plaintiff personally. *See* Matheson Dec. Ex. 4, p. 3 ("Demand is therefore made for payment in full of the amounts Mr. Donald is and would be entitled to receive, but for Vector's breach of contract and tortious conduct. * * * As a result, demand is therefore made that Vector pay to Mr. Donald the sum of $600,000 immediately.") The claims of JWD and plaintiff also arise from the same events and circumstances and are inextricably intertwined. To allow plaintiff to avoid having to arbitrate his claims under these circumstances would eviscerate the Arbitration Provision by

elevating form over substance. Accordingly, plaintiff's individual claims are nonetheless subject to the Arbitration Provision. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004) (requiring non-signatory architect who provided services to a school district to arbitrate his claims against the school district's construction company pursuant to the arbitration agreement between the school district and construction company because his claims were indistinguishable from those of the school district).

Plaintiff is also bound by the Arbitration Provision because he has pursued arbitration under it by asserting individually a counterclaim claim against Vector for defamation. *See* Matheson Dec., Ex. 7, p. 5 ("Count III - Defamation [On Behalf of JWD and Mr. Donald]"); *Thomson-CSF,* 64 F.3d at 77 (stating "a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate"); *accord White v. Nat'l Football League*, 92 F. Supp. 2d 918, 922-24 (D. Minn. 2000).

2.      **The terms are sufficiently definite to compel arbitration of plaintiff's wage claims**

The terms of the Arbitration Provision are also sufficiently definite to be enforced. It states, in relevant part, as follows:

> The DVM [Division Manager] and Vector further agree that if any dispute of any kind arises between them which they are unable to resolve themselves, they will submit such dispute to binding, individual, non-class/non-representative/non-collective arbitration as their sole and exclusive remedy. By agreeing to arbitration, both parties understand and agree that any dispute between them will be resolved by a neutral third person outside of court and that they are waiving their rights to sue in a court of law and to have a jury trial regarding such disputes. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, liquidated damages, civil penalties, attorney fees or any other right or remedy under state or federal

- 8 -

> law related to this Agreement or to services hereunder, equitable or otherwise, but not including claims which are excluded from arbitration by applicable state or federal law.

Matheson Dec., Ex. 3 at ¶ 12.

The Arbitration Provision could not be any clearer or more unequivocal. It applies to "any dispute of any kind that arises between" the parties. And lest there be any doubt whether plaintiff's wage claims are included, it expressly provides that it includes "claims or controversies arising out of, related to, or resulting from . . . statutory claims for wages, compensations, [and] expenses reimbursement . . . ." *Id. See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (enforcing arbitration of wage claims under the FLSA). Such language is more than adequate to encompass plaintiff's claims. *See Berkley v. Dillard's Inc.*, 450 F.3d 775, 778 (8th Cir. 2006) (citation omitted) (finding language stating arbitration agreement covered "any claim that could be made in a court of law" sufficient to cover plaintiff's employment-related claims). Should any doubt still remain, it "should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

As a result, the Arbitration Provision is a valid and enforceable arbitration agreement under Pennsylvania law. *See Soroko*, 2015 WL 5585350, at *5-6 ("[a]n agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.") (quoting *Peerless Publ'ns, Inc. v. Cnty. of Montgomery*, 656 A.2d 547, 522 (Pa. Commw. Ct. 1995), *appeal denied*, 668 A.2d 1141 (Pa. 1995)).

**3.** **Adequate consideration exists to enforce the Arbitration Provision**

Under Pennsylvania law, "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Here, the arbitration provision of the 2016-17 Agreement provides that both plaintiff and Vector will submit all "claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, . . . or any other right or remedy under state or federal law related to this Agreement." Ex. 3 ¶ 12. Thus, adequate consideration exists to enforce the Arbitration Provision.

**B.** **Arbitration Must Be Compelled On An Individual Basis**

The Arbitration Provision restricts the parties to individual arbitration and prohibits them from raising class or collective claims in the arbitration. Ex. 3 ¶ 12. The Supreme Court has held that such class and collective-action waivers are valid and enforceable as a matter of preemptive federal law under the FAA. *See AT&T Mobility LLC*, 563 U.S. at 352 (holding that the FAA preempts state laws that prohibit the enforcement of class action waivers in consumer arbitration agreements); *accord Am. Express Co. v. Italian Colors Rest.*, 570 U.S. __, 133 S. Ct. 2304, 2311-12 (2013) (holding that under the FAA, class action waivers must be enforced according to their terms, and rejecting the argument that enforcing the waiver would make it impossible for plaintiffs to effectuate their rights). *See also Owen*, 702 F.3d 1050 (enforcing class waiver of FLSA claims and compelling individual arbitration). The Eighth Circuit also recently reiterated the strength of the public policy favoring enforcement of class waivers in arbitration agreements in *Cellular Sales of Mo. LLC v Nat'l*

- 10 -

*Labor Relations Bd.*, 824 F.3d 772, 776 (8th Cir. 2016), in which it held that the National Labor Relations Act does not bar enforcement of such agreements.

Therefore, the Court should compel plaintiff to arbitrate his claims on an individual basis.

## POINT II

## PLAINTIFF WAIVED HIS RIGHT TO PURSUING HIS CLAIMS IN COURT

The federal courts will not allow a party who is bound by a valid agreement to arbitrate to manipulate the judicial and arbitral systems by pursuing his claims in both court and arbitration. *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016). Once a party elects arbitration the party waives the right to proceed in court. *See Norton v. AMISUB St. Joseph Hosp.*, 155 F.3d 1040, 1041 (8th Cir. 1998) (affirming dismissal of the complaint on the ground that plaintiff waived her right to pursue her employment discrimination claims in court by, among other things, voluntarily participating in arbitration). *Compare Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 923-24 (8th Cir. 2009) (holding that defendant waived its right to arbitration when it acted inconsistently with that right by filing a motion to dismiss in court). The Ninth Circuit succinctly summarized the law on this point by stating:

> A party that signs a binding arbitration agreement . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both. A party may not delay seeking arbitration until after the district court rules against it . . . nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum. Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party.

*Martin*, 829 F.3d at 1128.

- 11 -

Here, plaintiff voluntarily submitted to arbitration when he filed his counterclaim in the JAMS arbitration on July 7, 2017, three weeks before he commenced this action (*see* Matheson Dec., Exs. 6 and 9), and by doing so elected his forum and waived his right to sue in court.

Plaintiff's action of bringing his FLSA and MWL claims in court does not relieve him from the effects of the waiver.  Where claims involve the same parties and arise out of the same operative facts the parties are precluded from splitting their claims between different courts or forums.  *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841-42 (11th Cir. 2017).  As the Tenth Circuit stated in *Katz v. Gerardi*, 655 F.3d 1212, 1217-19 (10th Cir. 2011):

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.  By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases."

*Id.* at 1217 (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)).

### POINT III

### THE COMPLAINT SHOULD BE DISMISSED OR IN THE ALTERNATIVE THE ACTION SHOULD BE STAYED

Because all of the claims asserted by Plaintiff are arbitrable, the Court has the discretion to and should dismiss the Complaint.  *Bray v. United Ins. Co. of Am.*, No. 14-CV-01390, 2014 WL 6389569, at *3 (E.D. Mo. Nov. 14, 2014); *Randazzo v. Anchen Pharms., Inc.*, No. 12-CV-999, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 8, 2012).  Alternatively, the Court should stay this action pending the completion of individual arbitration proceedings.

## CONCLUSION

Plaintiff should be compelled to arbitrate his FLSA and MWL claims against Vector. Plaintiff entered into a valid and binding arbitration agreement with Vector that requires him to arbitrate "any dispute of any kind" between them, including statutory claims for wages. Moreover, plaintiff waived his right to pursue his claims in court by voluntarily asserting covered claims in arbitration before commencing this action. By bringing this action plaintiff is attempting to get out from under an agreement he freely entered into and waste the Court's resources by impermissibly splitting his claims between arbitration and court. The Court should refuse to allow plaintiff to do so. Therefore, Vector respectfully requests that the Court grant its motion to compel and dismiss the complaint with prejudice or in the alternative stay this action pending arbitration.

Dated: September 14, 2017         Respectfully submitted,

VECTOR MARKETING CORPORATION

By their attorneys,

HUSCH BLACKWELL LLP

By:    */s/ Andrew J. Weissler*
     Andrew J. Weissler, #64229MO
     190 Carondelet Plaza, Suite 600
     St. Louis, MO 63105
     Tel: (314) 480-1500
     Fax: (314) 480-1505
     aj.weissler@huschblackwell.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused this document to be filed through the ECF system, which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, if any, on September 14, 2017.


*/s/ Andrew J. Weissler*


Doc #01-3066443.5

- 14 -