**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JUSTIN DONALD, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. ) ) |
| VECTOR MARKETING CORPORATION, | ) ) ) |
| Defendant. | ) ) |

**DECLARATION OF PAUL MATHESON IN SUPPORT OF**
**VECTOR MARKETING CORPORATION'S MOTION**
**TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S CLAIMS**

I, Paul Matheson, declare:

1. I am the Legal Affairs Manager for Vector Marketing Corporation ("Vector"), the Defendant in the above-captioned action, and have served in that capacity since 2002. As Legal Affairs Manager, I serve as the internal company contact and external representative with respect to inquiries or issues of a legal nature, including, but not limited to, any administrative matter or lawsuit filed against Vector. In that capacity I am familiar with Vector's general business operations, policies, practices and procedures, including its relationship with its Division Managers. I also have access to, have reviewed and am knowledgeable about Vector's business records regarding its relationship with plaintiff Justin Donald, a former Division Manager for Vector.

2. Vector is a direct sales company headquartered in Olean, New York that sells a line of high-quality kitchen cutlery, kitchen accessories and sporting knives manufactured by Cutco Cutlery Corporation.

3.      Under its direct sales model, Vector engages on an independent contractor basis Division Managers who run and manage every aspect of their own businesses, including, but not limited to, leasing their own office space from which they conduct such business.  Vector contracts with approximately 40 such independently-run businesses in the United States to recruit, train, and motivate sales representatives to solicit orders for the products manufactured by Cutco Cutlery Corporation.  All of the orders solicited by sales representatives are sent to Vector at its Olean, NY headquarters for approval, and if approved, are processed and shipped by common carrier directly to consumers in every state, including Missouri.

4.      From at least September 2014 to approximately mid-January 2017 plaintiff provided services to Vector as a Division Manager for the region known as the Gateway Division that includes the state of Missouri.  A Division Manager, among other things, oversees the recruitment, training, and ongoing motivation of sales representatives in his or her area.  Plaintiff performed his services as a Division Manager from 2014 to 2017 under three separate Independent Contractor Division Manager Agreements entered into by and between Vector and plaintiff through The JWD Group, L.L.C. ("JWD").  *See* Exhibit 1 (Independent Contractor Division Manager Agreement between Vector and JWD for the period September 1, 2014 through August 31, 2015); Exhibit 2 (Independent Contractor Division Manager Agreement between Vector and JWD for the period September 1, 2015, through August 31, 2016); and Exhibit 3 (Independent Contractor Division Manager Agreement between Vector and JWD for the period May 1, 2016, through August 31, 2017).

5.      JWD is a Missouri limited liability company that is solely owned and operated by plaintiff.  *See* Exhibit 1, ¶ 1.

6.      When completing all three Independent Contractor Division Manager Agreements plaintiff wrote his name (Justin Donald) on the lines in the signature block next to the words "DVM Name (Please print)" and affixed his signature on the lines next to the words "DVM Signature."  Exs. 1, 2, and 3.

7.      The relationship between Vector and plaintiff and JWD ended in early 2017.  The parties dispute who ended the relationship.

8.      On or about May 19, 2017, Vector received a demand letter from the law firm of Carmody MacDonald on behalf of plaintiff and JWD alleging, among other things, that Vector had materially breached the 2016-17 Agreement and demanding that Vector pay plaintiff $600,000 that he allegedly would have received if he had continued to provide services to Vector under the 2016-17 Agreement.  A copy of the demand letter is attached as Exhibit 4.

9.      The Independent Contractor Division Manager Agreement for the period May 1, 2016 through August 31, 2017 ("2016-17 Agreement") contains a broad arbitration provision, that provides in relevant part as follows:

> The DVM [Division Manager] and Vector further agree that if any dispute of any kind arises between them which they are unable to resolve themselves, they will submit such dispute to binding, individual, non-class/non-representative/non-collective arbitration as their sole and exclusive remedy. By agreeing to arbitration, both parties understand and agree that any dispute between them will be resolved by a neutral third person outside of court and that they are waiving their rights to sue in a court of law and to have a jury trial regarding such disputes.  The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, liquidated damages, civil penalties, attorney fees or any other right or remedy under

state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not including claims which are excluded from arbitration by applicable state or federal law.

Exhibit 3, ¶ 12 ("Arbitration Provision").

10.    In response to the demand letter, Vector filed a demand for arbitration with JAMS on June 23, 2017, pursuant to the Arbitration Provision, demanding that plaintiff and JWD submit their claims to arbitration.  A copy of Vector's demand for arbitration is attached as Exhibit 5.

11.    Plaintiff and JWD responded to the demand for arbitration by filing a counterclaim against Vector in the JAMS arbitration proceeding on July 7, 2017, alleging, among other things, that Vector breached the 2016-17 Agreement by failing to pay plaintiff and JWD commissions owed under it.  A copy of plaintiff's and JWD's counterclaim in arbitration and the cover letter serving it are attached as Exhibit 6.

12.    The counterclaim of plaintiff and JWD filed in the JAMS arbitration proceeding asserts claims for breach of contract and tortious interference with business expectancy on behalf of JWD (Counts I and II) and defamation on behalf of plaintiff individually (Count III).  *See* Exhibit 6.

13.    Vector filed a response to the arbitration counterclaim of plaintiff and JWD on July 19, 2017.  A copy of Vector's response is attached as Exhibit 7.

14.    On July 21, 2017, JAMS appointed the Hon. Geraldine Soat Brown (Ret.) to serve as the arbitrator in the arbitration, pursuant to the parties' mutual agreement. A copy of the notice appointing Judge Brown as arbitrator is attached as Exhibit 8.

15.    On July 28, 2017, plaintiff filed this action in the Circuit Court of St. Louis County.  A copy of the complaint is attached as Exhibit 9.

16.    On August 31, 2017, counsel for both Vector and plaintiff/JWD appeared telephonically at a preliminary conference in the JAMS arbitration conducted by Judge Brown.  As a result of that conference Judge Brown issued the scheduling order attached as Exhibit 10.

17.    Vector removed this action to this Court on September 7, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September _14_, 2017

_____

Paul Matheson

Doc #01-3066815.5

DocuSign Envelope ID: ACB97BEA-F549-49CB-8D93-B9339B7350D5

## INDEPENDENT CONTRACTOR DIVISION MANAGER AGREEMENT (Incorporated DVM's)

THIS AGREEMENT, effective September 2014, between VECTOR MARKETING CORPORATION, a Pennsylvania corporation with its principal office at 1116 East State Street, Olean, New York 14760 (hereinafter "Vector") and THE JWD GROUP, LLC ("Company"), solely owned and operated by Justin Donald (Principal) with an address at 11641 OLIVE BLVD in CREVE COEUR MO (Here after collectively "DVM").

WHEREAS Vector desires to engage DVM as an Independent Contractor to serve as Division Manager for Vector and DVM desires to be so engaged. NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is agreed by and between Vector and DVM as follows:

1. Vector hereby contracts with DVM as a direct sales and marketing representative to solicit orders for Vector's products on an in-home basis or otherwise than in a permanent retail establishment. DVM will be described as a Division Manager of Vector. DVM hereby accepts the terms of this Agreement and agrees to solicit orders for Vector's products subject only to the provisions contained herein and in the current Sales Rep Agreement a copy of which the DVM possesses. For all purposes, the parties intend that DVM shall be construed as an independent contractor. DVM will not be treated as an employee with respect to such services for federal, state, or local tax purposes, including but shall not be limited to unemployment compensation or worker's compensation taxes, or for any other purpose. DVM shall not at any time represent to be an employee of Vector.

2. The term of this Agreement shall commence on September 1, 2014, and terminate on August 31, 2015, and may be renewed by the execution of a new written agreement.

3. During the term of this Agreement, the DVM shall be responsible for actively recruiting and motivating Vector Sales Representatives (hereinafter "Sales Reps") on a weekly basis, from DVM's Pilot office in CREVE COEUR MO which DVM will establish and maintain over the full term of this Agreement. DVM will also provide motivation and instruction support to District Managers (DM's) and Branch Managers (BM's) who are operating their own independent direct sales businesses within the area defined as the Division.

4. It is understood that all expenses incurred by DVM to provide such services are DVM's full and complete responsibility and that DVM shall have no power or authority to incur or create any liability or obligation of any kind in the name of Vector Marketing Corporation. DVM understands and agrees to offsets to the DVM's commission schedule which will include, but are not limited to, charges for minimum incentive and fast start prizes, order adjustments, literature and other expenses that Vector advances or incurs on behalf of the DVM. At no time shall DVM have authority to approve sales orders, collect accounts receivable, or authorize customer credit. DVM agrees to adhere to the Vector Code of Ethics, Standards for Advertising, and all applicable state and/or federal laws in the performance of services under this agreement.

5. In consideration of the services provided under this Agreement, Vector shall pay commissions to DVM on the direct sales of its product as follows:
    a. **Personal Sales Volume Commissions.** For C.P.O. on sales made personally by DVM, a commission of 35% on approved orders that are ship to and retained by the customer, not including taxes or shipping costs, with no minimum monthly sales required.
    b. **Volume Commissions.** Weekly volume commissions on C.P.O. sales of Vector's products by Sales Reps in DVM's Pilot office, based on approved orders that are shipped to and retained by the customer, not including taxes or shipping costs at the following rates:

| Sales Rep Career Sales | Division Manager Commission % | Sales Rep Career Sales | Division Manager Commission % | Sales Rep Career Sales | Division Manager Commission % |
|---|---|---|---|---|---|
| $0-999 | 25% | $ 1,000 – 2,999 | 20% | $ 3,000 – 5,999 | 15% |
| $ 6,000 – 54,999 | 10% | $55,000+ | 5+% | | |

    c. **Branch Office Sales.** DVM is entitled to a 5% commission on CPO by Sales Reps from Branch offices directly associated with DVM's Pilot Office where there the Branch Offices has no District Office affiliation, except that no commission shall be paid on sales by any rep who has achieved the title of Senior Field Sales Leader associated with a Branch office.
    d. **Division Overrides.** DVM is also entitled to a 3% commission on sales by Sales Reps associated with all offices within DVM's division.
    e. **Incentive Commissions.** DVM shall be eligible for other incentive commissions as are offered from time to time by Vector to all Division Managers.
    f. **C.P.O. Sales.** C.P.O. consist of the cash sale price of VECTOR's products less the point value of bonus items, associated taxes, fees, shipping costs or other reductions.

6. DVM shall maintain needed levels of insurance, such as liability, fire and theft insurance, during the term of this Agreement for the benefit of DVM's business, required by their lease and in amounts adequate to cover costs of all unpaid sample kits in the possession of DVM.

7. During the term of this Agreement, DVM shall be authorized to use the name "Vector Marketing" as a part of DVM's business trade name or style while rendering service under this Agreement, but not thereafter. DVM shall also be authorized to refer to DVM as an authorized distributor of "CUTCO" products during the Agreement term. This is a grant in connection with the sales efforts described above. The trade names, trademarks, service names and service marks for "CUTCO" and "Vector" are owned by CUTCO Corporation. The use of such names or marks shall only be permitted for the sale of product on a direct face-to-face in-home basis. The use of these corporate properties for any other purpose or in any electronic media including, but not limited to, the Internet is prohibited without prior written approval. To apply for approval, the DVM shall send a written proposal to the attention of the Legal Affairs Manager at the administrative office in Olean. In no event shall DVM be authorized to use the name "Vector Marketing Corporation" or "CUTCO Cutlery Corporation" in any medium, including but not limited to business leases, business cards, directories, stationery, advertisements, phone listings, bank accounts, or any electronic media (e.g., Internet).

8. It is recognized that during the term of this Agreement, DVM will have access to and may become familiar with confidential or proprietary information which is owned by Vector Marketing Corporation or its affiliates and used in the operation and/or development of their business. It is understood that the terms of this Agreement themselves constitute "confidential information" hereunder. DVM shall not disclose any of said confidential information to any individual or entity whatsoever, directly or indirectly, nor use said confidential information in any way, during the term of this Agreement, or thereafter, except as required in the course of providing services hereunder. More specifically, VECTOR and DVM agree that the following are the confidential and proprietary information and shall not be used and/or disclosed by DVM except as required in the course of providing services to VECTOR: customer lists, the content of VECTOR's private websites, lists of recruits or candidates and VECTOR's internet advertising, direct mail and personal recruiting programs.

9. During the term of this Agreement and for a period of one (1) year thereafter, DVM shall not proselytize Vector Division Managers, District Managers, Branch Managers, Assistant Managers and/or Sales Representatives to participate directly or indirectly with any other business activity, nor, in particular, with any other direct selling activity, nor will DVM participate directly or indirectly with any other business which manufactures, promotes, and/or sells products which are the same or substantially similar in intended use or characteristics to those manufactured and/or sold by Vector and affiliates, without the prior written consent of Vector.

10. Vector reserves the right to terminate this Agreement for good cause. Good cause shall include, but not be limited to, breach of contract, lack of performance by DVM, violation of law, mishandling of customer money, submitting bad checks, and falsifying reports, records, or other information, and a change in the ownership and/or operations of DVM.

11. This agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

12. All notices, requests, demands and other communication hereunder or with respect hereto shall be in writing and shall be deemed to have been duly given upon being delivered, faxed, emailed or if mailed (postage prepaid), shall be deemed to have been given six (6) days after such mailing, as follows:
    a. If to DVM, to: ATTN: JUSTIN W DONALD
       11641 OLIVE BLVD
       CREVE COEUR MO
       Or to such other address as either party hereto may furnish to the other in writing

    b. If to Vector, to:    Vector Marketing Corp.
       PO Box 1228
       1116 East State St
       Olean, New York 14760
       Attn: President/COO

13. The DVM and Vector further agree that if a dispute arises between them which they are unable to resolve, they will submit such dispute to binding, non-class arbitration. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, damages, civil penalties, attorney fees or any other right or remedy under state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not claims which are excluded from arbitration by applicable state or federal law.

    The arbitration will be conducted by and under the rules of the Judicial Arbitration and Mediation Services (JAMS). If JAMS does not have offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the arbitration will be conducted by and under the rules of the American Arbitration Association (AAA). If AAA does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the parties shall select an arbitrator and conduct the arbitration in the manner provided in the JAMS Comprehensive Arbitration Rules and Procedures.

    The arbitrator shall have the authority to resolve all disputes and order all remedies that would be available to the parties if the dispute between them had been commenced in a court of law. The arbitrator shall issue a written arbitration award. The arbitrator may not consolidate the claims of more than one person nor preside over any form of representative, collective or class proceeding. Vector shall pay all costs of the arbitration other than any administrative fees and attorney's fees the DVM would have incurred to file a claim in a court of law.

14. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their legal representatives, successors and assigns, but may not be assigned by DVM without the prior written consent of Vector.

    If any terms, conditions, clause, or provision of this Agreement shall be determined by a court of competent jurisdiction to be void or invalid at law, or for any other reason, then only that term, condition, clause, or provision as is determined to be void or invalid shall be stricken from the Agreement, and this Agreement shall remain in full force and effect in all other respects. Vector reserves the right to amend or revise the terms of this agreement upon 30 days written notice to all division managers.

    IN WITNESS WHEREOF, both parties sign and agree to the all as described above on the effective date noted below.

DVM Corporation Name THE JWD GROUP, LLC

DVM Name (Please print) Justin Donald

DVM Signature _[signed]_          8/30/2014                    VECTOR MARKETING CORPORATION
                                  Date          By: _[signed]_ John Whelpley          9/2/2014
                                                   John Whelpley, President/COO        Date
                                                                                       Rev: 8/2014

VECTOR

Exhibit 1

DocuSign Envelope ID: 2813947B-75AA-4EB4-A894-9C666BB710FD



## INDEPENDENT CONTRACTOR DIVISION MANAGER AGREEMENT (Incorporated DVM's)

THIS AGREEMENT, effective September 2015, between VECTOR MARKETING CORPORATION, a Pennsylvania corporation with its principal office at 1116 East State Street, Olean, New York 14760 (hereinafter "Vector") and ___THE JWD GROUP, LLC_____("Company") with an address at ___11641 OLIVE BLVD_____ in _CREVE COEUR_____ ___MO___ (here after collectively "DVM").

WHEREAS Vector desires to engage DVM as an Independent Contractor to serve as Division Manager for Vector and DVM desires to be so engaged.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is agreed by and between Vector and DVM as follows:

1. Vector hereby contracts with DVM as a direct sales and marketing representative to solicit orders for Vector's products on an in-home basis or otherwise than in a permanent retail establishment. DVM will be described as a Division Manager of Vector. DVM hereby accepts the terms of this Agreement and agrees to solicit orders for Vector's products subject only to the provisions contained herein and in the current Sales Rep Agreement, a copy of which the DVM possesses. For all purposes, the parties intend that DVM shall be construed as an independent contractor. DVM will not be treated as an employee with respect to such services for federal, state, or local tax purposes, including but not be limited to unemployment compensation or worker's compensation taxes, or for any other purpose. DVM shall not at any time represent himself/herself to be an employee of Vector.

2. The term of this Agreement shall commence on September 1, 2015, and terminate on August 31, 2016, and may be renewed by the execution of a new written agreement.

3. In addition to soliciting orders for Vector's products, DVM shall be responsible for actively recruiting Vector Sales Representatives (hereinafter "Sales Reps") on a weekly basis, from DVM's office in _CREVE COEUR_____ __MO_, __, which DVM will establish and maintain over the full term of this agreement. In general, DVM shall provide training and motivation to such recruits in relation to the direct sales activities within DVM's office. It is understood that all expenses incurred by DVM to provide services are DVM's full and complete responsibility and that DVM shall have no power or authority to incur or create any liability or obligation of any kind in the name of the company. DVM understands and accepts that Vector from time to time may apply promotional expense charges to DVM's commission account including, but not limited to, charges for minimum incentive and fast start expenses. At no time shall DVM have authority to approve sales orders, collect accounts receivable, or authorize customer credit. DVM agrees to adhere to the Vector Code of Ethics, Standards for Advertising, and all applicable state and/or federal laws in the performance of services under this agreement.

4. In consideration of the services provided under this Agreement, Vector shall pay commissions to DVM on the direct sales of its product as follows:
   a. **Personal Sales Volume Commissions.** For C.P.O. sales made personally by DVM, a commission of 35% on approved orders that are shipped to and retained by the customer, with no minimum monthly sales required.
   b. **Volume Commissions.** Weekly volume commissions on C.P.O. sales of Vector's products by Sales Reps launched in DVM's Pilot office after December 25,2014, based on approved orders that are shipped to and retained by the customer, not including taxes or shipping costs at the following rates:

| Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % |
|---|---|---|---|---|---|
| $0-1000 | 25% | $ 1,001 – 3,000 | 20% | $ 3,001 – 6,000 | 15% |
| $ 6,001 – 150,000 | 10% * | $ 150,001+ | 5% * | | |

*For reps launched prior to December 25, 2014, the override for over $55,000 Rep CPO Sales will be 5%

   c. **Branch Office Sales.** DVM is entitled to a 5% commission on CPO by Sales Reps from Branch offices directly associated with DVM's Pilot Office where the Branch Office has no District Office affiliation, except that no commission shall be paid on sales by any rep affiliated with a Branch Office who has achieved over $20,000 Career CPO Sales.
   d. **Division Overrides.** DVM is also entitled to a 3% commission on sales by Sales Reps associated with all offices within DVM's division.
   e. **Incentive Commissions.** DVM shall be eligible for such other incentive commissions as are offered from time to time by Vector to its Division Managers.
   f. **Changes to Commission and Incentive Commission Schedules.** Vector retains the right to modify the foregoing commission structures contained in this Paragraph "4" from time to time, but only to the extent it modifies the same for Division Managers generally.
   g. **C.P.O. Sales.** C.P.O. sales are defined as the product sales amount, based on approved customer orders, upon which commissions shall be paid by Vector to sales reps. Typically the "sales amount" shall consist of the cash sale price less the point value of bonus items and shall not include associated taxes, fees, or shipping costs.

5. DVM shall maintain necessary levels of General Liability & Property Insurance during the term of this Agreement for the protection of DVM's business, as may be required by DVM's lease and in amounts adequate to cover the DVM's business property including but not limited to unpaid Sample Kits in the possession of DVM.

6. During the term of this Agreement, DVM shall be authorized to use the name "Vector Marketing" as a part of DVM's business trade name or style while rendering service under this Agreement, but not thereafter. DVM shall also be authorized to refer to himself/herself as an authorized distributor of "CUTCO" products during the Agreement term. This is a grant in connection with the sales efforts described above. The trade names, trademarks, service names and service marks for "CUTCO" and "Vector" are owned by CUTCO Corporation. The use of such names or marks shall only be permitted for the sale of product on a direct face-to-face in-home basis. The use of these corporate properties for any other purpose or in any electronic media including, but not limited to, the Internet is prohibited without prior written

<u>Exhibit 2</u>

DocuSign Envelope ID: 2813947B-75AA-4EB4-A894-9C666BB710FD

approval. To apply for approval, the DVM shall send a written proposal to the attention of the Legal Affairs Manager at the administrative office in Olean. In no event shall DVM be authorized to use the name "Vector Marketing Corporation" or "CUTCO Cutlery Corporation" in any medium, including but not limited to business leases, business cards, directories, stationery, advertisements, phone listings, bank accounts, or any electronic media (e.g., Internet).

7.  It is understood that during the term of this Agreement, DVM will have access to and may become familiar with confidential or proprietary information which is owned by Vector Marketing Corporation or its affiliates and used in the operation and/or development of their business. It is understood that the terms of this Agreement themselves constitute "confidential information" hereunder. DVM shall not disclose any of said confidential information to any individual or entity whatsoever, directly or indirectly, nor use said confidential information in any way, during the term of this Agreement, or thereafter, except as required in the course of providing services hereunder. Such confidential proprietary information shall include but not be limited to customer lists, the content of Vector's private websites, lists of recruits or candidates, and Vector's internet advertising, direct mail, or personal recruiting programs.

8.  During the term of this Agreement and for a period of one (1) year thereafter, DVM shall not proselytize Vector Division Managers, District Managers, Branch Managers, Assistant Managers and/or Sales Representatives to participate directly or indirectly with any other business activity, nor, in particular, with any other direct selling activity, nor will DVM  participate directly or indirectly with any other business which manufactures, promotes, and/or sells products which are the same or substantially similar in intended use or characteristics to those manufactured and/or sold by Vector and affiliates, without the prior written consent of Vector.

9.  This agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

10. All notices, requests, demands and other communication hereunder or with respect hereto shall be in writing and shall be deemed to have been duly given upon being delivered, faxed, emailed or if mailed (postage prepaid), shall be deemed to have been given six (6) days after such mailing, as follows:

a. If to DVM, to: ATTN: JUSTIN W DONALD

11641 OLIVE BLVD

CREVE COEUR        MO        63141-7001

Or to such other address as either party hereto may furnish to the other in writing.

b. If to Vector, to:   Vector Marketing Corp.
PO Box 1228
1116 East State St.
Olean, New York 14760
Att: President/ COO

11. Vector reserves the right to terminate this Agreement for good cause. Good cause shall include, but not be limited to, breach of contract, lack of performance by DVM, violation of law, mishandling of customer money, submitting bad checks, and falsifying reports, records, or other information, and a change in the ownership and/or operations of DVM.

12. The DVM and Vector further agree that if a dispute arises between them which they are unable to resolve, they will submit such dispute to binding, non-class arbitration. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, damages, civil penalties, attorney fees or any other right or remedy under state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not claims which are excluded from arbitration by applicable state or federal law.
The arbitration will be conducted by and under the rules of the Judicial Arbitration and Mediation Services (JAMS). If JAMS does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the arbitration will be conducted by and under the rules of the American Arbitration Association (AAA). If AAA does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the parties shall select an arbitrator and conduct the arbitration in the manner provided in the JAMS Comprehensive Arbitration Rules and Procedures.
The arbitrator shall have the authority to resolve all disputes and order all remedies that would be available to the parties if the dispute between them had been commenced in a court of law. The arbitrator shall issue a written arbitration award. The arbitrator may not consolidate the claims of more than one person nor preside over any form of representative, collective, or class proceeding. Vector shall pay all costs of the arbitration other than any administrative fees and attorney's fees the DVM would have incurred to file a claim in a court of law.

13. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their legal representatives, successors and assigns, but may not be assigned by DVM without the prior written consent of Vector.
If any terms, conditions, clause, or provision of this Agreement shall be determined by a court of competent jurisdiction to be void or invalid at law, or for any other reason, then only that term, condition, clause, or provision as is determined to be void or invalid shall be stricken from the Agreement, and this Agreement shall remain in full force and effect in all other respects.

Vector reserves the right to amend or revise the terms of this agreement upon 30 days written notice to all division managers.

IN WITNESS WHEREOF, both parties sign and agree to all the terms as described above, on the effective date noted below.

DVM Corporation Name   THE JWD GROUP, LLC                                                  VECTOR MARKETING CORPORATION

DVM Name   Justin Donald

DVM Signature   Justin Donald          8/27/2015          By:   John Whelpley          8/28/2015
                92C63FE669F1473...          Date                 696932F9FB1345F  John Whelpley, President/COO          Date



Revised: 8/2015

Exhibit 2

DocuSign Envelope ID: ACC875C1-DA94-4309-BC7F-247CEE87EEB4



## INDEPENDENT CONTRACTOR DIVISION MANAGER AGREEMENT (Incorporated DVM's)

THIS AGREEMENT, effective September 2016, between VECTOR MARKETING CORPORATION, a Pennsylvania corporation with its principal office at 1116 East State Street, Olean, New York 14760 (hereinafter "Vector") and ___THE  JWD  GROUP,  LLC_____("Company") with an address at _11641  Olive  Blvd_____ in _CREVE   COEUR_____,MO____(here after collectively "DVM").
WHEREAS Vector desires to engage DVM as an Independent Contractor to serve as Division Manager for Vector and DVM desires to be so engaged.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is agreed by and between Vector and DVM as follows:

1.  Vector hereby contracts with DVM as a direct sales and marketing representative to solicit orders for Vector's products on an in-home basis or otherwise than in a permanent retail establishment. DVM will be described as a Division Manager of Vector. DVM hereby accepts the terms of this Agreement and agrees to solicit orders for Vector's products subject only to the provisions contained herein and in the current Sales Rep Agreement, a copy of which the DVM possesses. For all purposes, the parties intend that DVM shall be construed as an independent contractor. DVM will not be treated as an employee with respect to such services for federal, state, or local tax purposes, including but not be limited to unemployment compensation or worker's compensation taxes, or for any other purpose. DVM shall not at any time represent himself/herself to be an employee of Vector.

2.  The term of this Agreement shall commence on May 1, 2016, and terminate on August 31, 2017, and may be renewed by the execution of a new written agreement.

3.  In addition to soliciting orders for Vector's products, DVM shall be responsible for actively recruiting Vector Sales Representatives (hereinafter "Sales Reps") on a weekly basis, from DVM's office in _CREVE   COEUR_____,_MO____, which DVM will establish and maintain over the full term of this agreement. In general, DVM shall provide training and motivation to such recruits in relation to the direct sales activities within DVM's office. It is understood that all expenses incurred by DVM to provide services are DVM's full and complete responsibility and that DVM shall have no power or authority to incur or create any liability or obligation of any kind in the name of the company. DVM understands and accepts that Vector from time to time may apply promotional expense charges to DVM's commission account including, but not limited to, charges for minimum incentive and fast start expenses. At no time shall DVM have authority to approve sales orders, collect accounts receivable, or authorize customer credit. DVM agrees to adhere to the Vector Code of Ethics, Standards for Advertising, and all applicable state and/or federal laws in the performance of services under this agreement.

4.  In consideration of the services provided under this Agreement, Vector shall pay commissions to DVM on the direct sales of its product as follows:
    a.  **Personal Sales Volume Commissions.** For C.P.O. sales made personally by DVM, a commission of 35% on approved orders that are shipped to and retained by the customer, with no minimum monthly sales required.
    b.  **Volume Commissions.** Weekly volume commissions on C.P.O. sales of Vector's products by Sales Reps launched in DVM's Pilot office after December 25,2014, based on approved orders that are shipped to and retained by the customer, not including taxes or shipping costs at the following rates:

| Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % |
|---|---|---|---|---|---|
| $0-1000 | 25% | $ 1,001 – 3,000 | 20% | $ 3,001 – 6,000 | 15% |
| $ 6,001 – 150,000 | 10% * | $ 150,001+ | 5% * | | |

*For reps launched prior to December 25, 2014, the override for over $55,000 Rep CPO Sales will be 5%

    c.  **Branch Office Sales.** DVM is entitled to a 5% commission on CPO by Sales Reps from Branch offices directly associated with DVM's Pilot Office where the Branch Office has no District Office affiliation, except that no commission shall be paid on sales by any rep affiliated with a Branch Office who has achieved over $20,000 Career CPO Sales.
    d.  **Division Overrides.** DVM is also entitled to a 3% commission on sales by Sales Reps associated with all offices within DVM's division.
    e.  **Incentive Commissions.** DVM shall be eligible for such other incentive commissions as are offered from time to time by Vector to its Division Managers.
    f.  **Changes to Commission and Incentive Commission Schedules.** Vector retains the right to modify the foregoing commission structures contained in this Paragraph "4" from time to time, but only to the extent it modifies the same for Division Managers generally.
    g.  **C.P.O. Sales.** C.P.O. sales are defined as the product sales amount, based on approved customer orders, upon which commissions shall be paid by Vector to sales reps. Typically the "sales amount" shall consist of the cash sale price less the point value of bonus items and shall not include associated taxes, fees, or shipping costs.

5.  DVM shall maintain necessary levels of General Liability & Property Insurance during the term of this Agreement for the protection of DVM's business, as may be required by DVM's lease and in amounts adequate to cover the DVM's business property including but not limited to unpaid Sample Kits in the possession of DVM.

6.  During the term of this Agreement, DVM shall be authorized to use the name "Vector Marketing" as a part of DVM's business trade name or style while rendering service under this Agreement, but not thereafter. DVM shall also be authorized to refer to himself/herself as an authorized distributor of "CUTCO" products during the Agreement term. This is a grant in connection with the sales efforts described above. The trade names, trademarks, service names and service marks for "CUTCO" and "Vector" are owned by CUTCO Corporation. The use of such names or marks shall only be permitted for the sale of product on a direct face-to-face in-home basis. The use of these corporate properties for any other purpose or in any electronic media including, but not limited to, the Internet is prohibited without prior written approval. To apply for approval, the DVM shall send a written proposal to the attention of the Legal Affairs Manager at the administrative office in Olean. In no event shall DVM be authorized to use the name "Vector Marketing Corporation" or "CUTCO Cutlery Corporation" in any medium, including but not limited to business leases, business cards, directories, stationery, advertisements, phone listings, bank accounts, or any electronic media (e.g., Internet).

Exhibit 3

DocuSign Envelope ID: ACC875C1-DA94-4309-BC7F-247CEE87EEB4

7.  It is understood that during the term of this Agreement, DVM will have access to and may become familiar with confidential or proprietary information which is owned by Vector Marketing Corporation or its affiliates and used in the operation and/or development of their business. It is understood that the terms of this Agreement themselves constitute "confidential information" hereunder. DVM shall not disclose any of said confidential information to any individual or entity whatsoever, directly or indirectly, nor use said confidential information in any way, during the term of this Agreement, or thereafter, except as required in the course of providing services hereunder. Such confidential proprietary information shall include but not be limited to customer lists, the content of Vector's private websites, lists of recruits or candidates, and Vector's internet advertising, direct mail, or personal recruiting programs.

8.  During the term of this Agreement and for a period of one (1) year thereafter, DVM shall not solicit Vector Division Managers, District Managers, Branch Managers, Assistant Managers and/or Sales Representatives to participate directly or indirectly with any other business activity, nor, in particular, with any other direct selling activity, nor will DVM participate directly or indirectly with any other business which manufactures, promotes, and/or sells products which are the same or substantially similar in intended use or characteristics to those manufactured and/or sold by Vector and affiliates, without the prior written consent of Vector.

9.  This agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

10. All notices, requests, demands and other communication hereunder or with respect hereto shall be in writing and shall be deemed to have been duly given upon being delivered, faxed, emailed or if mailed (postage prepaid), shall be deemed to have been given six (6) days after such mailing, as follows:

    a. If to DVM, to:

    11641 Olive Blvd

    CREVE COEUR          MO          63141-7001

    Or to such other address as either party hereto may furnish to the other in writing.

    b. If to Vector, to:  Vector Marketing Corp.
    PO Box 1228
    1116 East State St.
    Olean, New York 14760
    Att: President/ COO

11. Vector reserves the right to terminate this Agreement for good cause. Good cause shall include, but not be limited to, breach of contract, lack of performance by DVM, violation of law, mishandling of customer money, submitting bad checks, and falsifying reports, records, or other information, and a change in the ownership and/or operations of DVM.

12. The DVM and the Company further agree that if any dispute of any kind arises between them which they are unable to resolve themselves, they will submit such dispute to binding, individual, non-class/non-representative/non-collective arbitration as their sole and exclusive remedy. By agreeing to arbitration, both parties understand and agree that any dispute between them will be resolved by a neutral third person outside of court and that they are waiving their rights to sue in a court of law and to have a jury trial regarding such disputes. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, liquidated damages, civil penalties, attorney fees or any other right or remedy under state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not including claims which are excluded from arbitration by applicable state or federal law.

    The arbitration will be conducted by the Judicial Arbitration and Mediation Services (JAMS) under its Comprehensive Arbitration Rules and Procedures. If JAMS does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the arbitration will be conducted by and under the Commercial Arbitration Rules of the American Arbitration Association (AAA). If AAA does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the parties shall select an arbitrator and conduct the arbitration in the manner provided in the JAMS Comprehensive Arbitration Rules and Procedures.

    The arbitrator shall have the authority to resolve all disputes and order all remedies that would be available to the parties if the dispute between them had been commenced in a court of law. The arbitrator shall issue a written arbitration decision and award that will be final and binding and on which judgment may be entered in any court of competent jurisdiction. The arbitrator shall not have the authority to join or consolidate the claims of more than one person or to hear or preside over any form of representative, collective, or class proceeding. The company shall pay all costs of the arbitration other than any filing fees in such amounts as the DVM would have incurred to file a claim in a court of law. The parties will pay their own attorney fees, except as otherwise provided by law. This provision shall be governed by the Federal Arbitration Act and shall survive the termination of this Agreement.

13. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their legal representatives, successors and assigns, but may not be assigned by DVM without the prior written consent of Vector. If any terms, conditions, clause, or provision of this Agreement shall be determined by a court of competent jurisdiction to be void or invalid at law, or for any other reason, then only that term, condition, clause, or provision as is determined to be void or invalid shall be stricken from the Agreement, and this Agreement shall remain in full force and effect in all other respects.

Vector reserves the right to amend or revise the terms of this agreement, except the arbitration requirements in paragraph 12, upon 30 days written notice to all division managers. IN WITNESS WHEREOF, both parties sign and agree to all the terms as described above, on the effective date noted below.

DVM Corporation Name  THE JWD GROUP, LLC                                    VECTOR MARKETING CORPORATION

DVM Name  Justin Donald

DVM Signature  Justin Donald          8/17/2016          By John Whelpley          8/17/2016

92C63FE669F1473...                    Date          John Whelpley, President/COO          Date


VECTOR
Marketing Corporation

Revised: 1/25/2016

Exhibit 3

# Carmody MacDonald

Carmody MacDonald P.C.
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105-1705
314-854-8600   Fax 314-854-8660
www.carmodymacdonald.com

S. Todd Hamby
sth@carmodymacdonald.com
Direct Dial: (314) 854-8630

May 19, 2017

**VIA EMAIL AND U.S. MAIL**

Mr. John Whelpley
Attention:  President/COO
Vector Marketing Corporation
P.O. Box 1228
1116 East State Street
Olean, New York 14760
whelpley@cutco.com

Mr. James M. Stitt
Attention:  President/CEO
Cutco Corporation
P.O. Box 1228
1116 East State Street
Olean, New York 14760
jstittjr@cutco.com

Re:     *Breach of Division Manager Agreement*

Dear Mr. Whelpley and Mr. Stitt:

Please be advised that this firm represents Justin Donald and The JWD Group, LLC in the above-referenced matter.

As you know, and as you have been repeatedly advised by Mr. Donald to no avail, you are in material breach of the Division Manager Agreement you entered into with The JWD Group on or about August 17, 2016 (the "Agreement").

To recap, Mr. Donald has worked for Vector Marketing Corporation and/or Cutco Corporation (collectively, "Vector") for almost *nineteen years* – since he was eighteen years old. During that time, he led his sales office to become the #1 office in the region, top 3 office nationally, and top 10 division nationally almost every year.  He has been loyal and faithful to Vector for his entire time with the company.  Due to his history and success with Vector, he wanted to move up and/or try another position within Vector.  Though there were repeated conversations of different opportunities, they never materialized, much to Mr. Donald's frustration.

On or about January 24, 2017, Mr. Donald spoke to Mr. Bruce Goodman and Mr. Mike Muriel about a number of new propositions he had about his future at Vector.  These suggestions – which he repeatedly referred to as "propositions" – included him (a) moving to Austin, Texas but maintaining an office in Creve Coeur, Missouri where he would continue to work as a division manager for Vector, (b) staying in St. Louis to run a pilot office until the end of his contract on August 31, 2017, (c) closing his current office to run a smaller office in Creve Coeur with necessary recruits per his contract but with cheaper rent, (d) running an office with just CSP's, (e) keeping an active Creve Coeur office that one of his District Managers would run training for

{9998/00050/2026098.DOCX.3}

Exhibit 4

# Carmody MacDonald

Mr. John Whelpley
Mr. James M. Stitt
May 19, 2017
Page 3

jointly with their office, also located in or close to Creve Coeur, and/or (d) simply trying something new (the "Propositions"). He stated repeatedly that he wanted to continue with Vector, was not planning on leaving Vector, and wanted to discuss still working there. He also made clear that he did not have a timeline for instituting his Propositions, he just wanted to discuss the options to see what would work for Vector.

Mr. Donald's Propositions were met with open hostility.

In sum, it appeared that Mr. Goodman and Mr. Muriel were upset that Mr. Donald may not remain as a full-time employee that would run the office the way Vector directed. They stated that his various Propositions would be considered "toxic" to the organization and they were not, under any scenario, "open to making it work." Even after Mr. Donald stated that he thought his propositions would continue to make Vector at the very least $4 to $5 million a year, they disagreed, saying it was a non-starter and "that's that." In sum, Vector was not open to any of his Propositions where it could not control how Mr. Donald worked for Vector, including the when, where, and how of the way Mr. Donald provided services and where services were not rendered by Mr. Donald personally. These demands were clearly outside of the terms of the Agreement and indicate an employer-employee relationship.

Mr. Goodman and Mr. Muriel told Mr. Donald at the end of the call that they should take a deep breath and decide where to go from there. That was not what was done. Over the next three weeks, Mr. Donald attempted to reach out to Mr. Muriel and Mr. Goodman to discuss continuing to work for Vector or the Propositions. They repeatedly refused to discuss the matter with him.

Instead, Vector went on a campaign to ensure Mr. Donald would not receive substantial amounts he was due under the Agreement and, in doing so, breached the Agreement.

Vector repeatedly misrepresented to Mr. Donald, his peers, and his sales force that Mr. Donald decided to no longer work for Vector – effective immediately. This caused substantial harm to Mr. Donald. Mr. Donald repeatedly sent letters and emails to Vector stating that was not the case, informing Vector that he had rented a location in Creve Coeur, Missouri to continue his operations, and he had every intention of continuing to operate in accordance with the terms of the Agreement. He repeatedly informed numerous people in your organization – including each of you – that he did not resign and had no plans to do so.

Mr. Donald was ignored.

Vector continued its misrepresentations and blatantly interfered with Mr. Donald's ability to operate or work. Vector refused to allow Mr. Donald to attend Vector events and transferred people out of his office into other offices and transferred his territory zip codes to another office.

{9998/00050/2026098.DOCX.3}

**Exhibit 4**

## Carmody MacDonald

Mr. John Whelpley
Mr. James M. Stitt
May 19, 2017
Page 3

It then took the untenable position that Mr. Donald was no longer operating under the Agreement because he did not recruit in March – ignoring the fact that his office had five recruits *but Vector assigned them to someone else* in violation of the Agreement.

Vector's egregious conduct not only breached the express terms of its Agreement and its duty of good faith and fair dealing, Vector's tortious conduct and misrepresentations caused substantial harm.

Vector's treatment of Mr. Donald seemingly ignored the Agreement in its entirety. Vector's actions regarding Mr. Donald, and individuals similarly situated to him, are also indicative of an employer-employee relationship – not an independent contractor relationship.

Demand is therefore made for payment in full of the amounts Mr. Donald is and would be entitled to receive, but for Vector's breach of contract and tortious conduct. Mr. Donald has projected that but for Vector's conduct, he would have received at least $600,000. As a result, demand is therefore made that Vector pay to Mr. Donald the sum of $600,000 immediately. This offer shall remain open until Friday, May 26, 2017. If I do not hear from you by that date, please note that we have been instructed to file suit against you.

Please give this matter your immediate attention. I look forward to your prompt response.

Very truly yours,

CARMODY MacDONALD P.C.

S. Todd Hamby

STH/tnb

{9998/00050/2026098.DOCX.3}

Exhibit 4



## Phillips Lytle LLP

<u>**VIA FED EX OVERNIGHT DELIVERY**</u>                                    June 23, 2017

JAMS
71 S. Wacker Drive
Suite 3090
Chicago, IL  60606

Re:     The JWD Group, LLC and Justin Donald / Vector Marketing Corporation
        Breach of Contract Arbitration

Dear Sir/Madam:

Enclosed for filing is an original and one copy of Vector Marketing's Demand for Arbitration Form.  Also enclosed is proof of service by Fed Ex upon The JWD Group, LLC and Justin Donald;  our firm check in the amount of $1,200 for the filing fee; and an extra copy to file-stamp and return in the enclosed pre-paid envelope.

Very truly yours,

Phillips Lytle LLP

By  *James R. Grasso*

James R. Grasso

JRGtmr
Enclosures
Doc #01-3050267.1

ATTORNEYS AT LAW

JAMES R. GRASSO, PARTNER  DIRECT **716 847 5422**  JGRASSO@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE **716 847 8400**  FAX **716 852 6100**

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | WASHINGTON, DC | CANADA: WATERLOO REGION | PHILLIPSLYTLE.COM

<u>Exhibit 5</u>

IN THE MATTER OF THE ARBITRATION BETWEEN

---

VECTOR MARKETING CORPORATION

AND                                                                          AFFIDAVIT OF SERVICE

THE JWD GROUP, LLC

(Justin Donald - Breach of Contract)

---

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF ERIE       )

       Bryan Jenkins, being duly sworn, deposes and says:  I am not a party to the action, am over the age of 18 years and am an employee of Phillips Lytle LLP in Buffalo, New York.  On June 23, 2017, I served the Demand for Arbitration of Vector Marketing Corporation on the following parties:

| | |
|---|---|
| The JWD Group, LLC | Justin Donald |
| 11641 Olive Blvd. | 9204 Shortridge Avenue |
| Creve Coeur, MO   63141-7001 | St. Louis, MO  63144-2148 |

by depositing true and correct copies of the same, enclosed in a postpaid, properly addressed wrapper, into the custody of Federal Express Corporation for **overnight delivery**, prior to the latest time designated by Federal Express Corporation for overnight delivery.

                                         Bryan Jenkins

Sworn to before me this
23rd day of June, 2017.

_____
Notary Public

SHANON M. HEDGES
No. 01HE6278835
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 04/01/20 21

Exhibit 5



## Phillips Lytle LLP

**VIA FED EX OVERNIGHT DELIVERY**                                    June 23, 2017

The JWD Group, LLC
11641 Olive Blvd.
Creve Coeur, MO   63141-7001

Re:     Vector Marketing Corporation - Demand for Arbitration

Dear Sir/Madam:

Enclosed for service is Vector Marketing Corporation's Demand for Arbitration.

Very truly yours,

Phillips Lytle LLP

By _James R. Grasso_

James R. Grasso

JRGtmr
Enclosures
Doc #01-3050263.1

ATTORNEYS AT LAW

JAMES R. GRASSO, PARTNER  DIRECT 716 847 5422  JGRASSO@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | WASHINGTON, DC | CANADA: WATERLOO REGION | PHILLIPSLYTLE.COM

Exhibit 5



## Phillips Lytle LLP

VIA FED EX OVERNIGHT DELIVERY                                    June 23, 2017

Justin Donald
9204 Shortridge Avenue
St. Louis, MO  63144-2148

Re:     Vector Marketing Corporation - Demand for Arbitration

Dear Mr. Donald:

Enclosed for service is Vector Marketing Corporation's Demand for Arbitration.

Very truly yours,

Phillips Lytle LLP

By

James R. Grasso

JRGtmr
Enclosures
Doc #01-3050269.1

ATTORNEYS AT LAW

JAMES R. GRASSO, PARTNER  DIRECT 716 847 5422  JGRASSO@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | WASHINGTON, DC | CANADA: WATERLOO REGION | PHILLIPSLYTLE.COM

Exhibit 5



## Phillips Lytle LLP

VIA FED EX OVERNIGHT DELIVERY                                    June 23, 2017

S. Todd Hamby, Esq.
Carmody MacDonald
120 S. Central Avenue, Suite 1800
St. Louis, MO  63105-1705

Re:    Vector Marketing Corporation - Demand for Arbitration

Dear Mr. Hamby:

Enclosed is a courtesy copy of Vector Marketing Corporation's Demand for Arbitration
served on The JWD Group, LLC and Justin Donald and filed with JAMS.

Very truly yours,

Phillips Lytle LLP

By James R. Grasso

James R. Grasso

JRGtmr
Enclosures
Doc #01-3050264.1

ATTORNEYS AT LAW

JAMES R. GRASSO, PARTNER  DIRECT 716 847 5422  JGRASSO@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100
NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER  |  WASHINGTON, DC  |  CANADA: WATERLOO REGION  |  PHILLIPSLYTLE.COM

Exhibit 5



# Demand for Arbitration Form (continued)
### Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)
Add more respondents on page 6.

| | |
|---|---|
| RESPONDENT NAME | The JWD Group, LLC |
| ADDRESS | 11641 Olive Blvd. |
| CITY | Creve Coeur |
| STATE | MO |
| ZIP | 63141-7001 |
| PHONE | |
| FAX | |
| EMAIL | |

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | S. Todd Hamby, Esq. |
| FIRM/COMPANY | Carmody MacDonald |
| ADDRESS | 120 S. Central Avenue, Suite 1800 |
| CITY | St. Louis |
| STATE | MO |
| ZIP | 63105-1705 |
| PHONE | 314-854-8630 |
| FAX | 314-854-8660 |
| EMAIL | sth@carmodymacdonald.com |

## FROM CLAIMANT
Add more claimants on page 7.

| | |
|---|---|
| CLAIMANT NAME | Vector Marketing Corporation |
| ADDRESS | 1116 East State Street |
| CITY | Olean |
| STATE | NY |
| ZIP | 14760 |
| PHONE | |
| FAX | |
| EMAIL | |

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | James R. Grasso, Esq. |
| FIRM/COMPANY | Phillips Lytle LLP |
| ADDRESS | One Canalside, 125 Main Street |
| CITY | Buffalo |
| STATE | NY |
| ZIP | 14203-2887 |
| PHONE | 716-847-5422 |
| FAX | 716-852-6100 |
| EMAIL | jgrasso@phillipslytle.com |

Exhibit 5

 # Demand for Arbitration Form (continued)
### Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

 If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION. A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

The JWD Group, LLC and Justin Donald have asserted claims against Vector Marketing Corporation ("Vector") that Vector breached the Independent Contractor Division Manager Agreement ("Agreement") entered into between Vector and The JWD Group, LLC on August 17, 2016, breached the duty of good faith and fair dealing and engaged in tortious conduct and misrepresentation.  Pursuant to paragraph 12 of the Agreement, all such claims are subject to arbitration before JAMS and, accordingly, Vector demands that The JWD Group, LLC and Justin Donald submit their claims to arbitration.

Vector asserts as defenses to such claims that The JWD Group, LLC and Mr. Donald anticipatorily breached the Agreement by Mr. Donald stating he was closing the Creve Coeur office and/or that he would no longer be involved in managing it and that Vector had good cause to terminate the Agreement based on such conduct, that their claims are barred by the doctrines of equitable estoppel and unclean hands based on their statements and conduct indicating they were closing the Creve Coeur office, that its actions were justified because it has an economic interest in the maintenance of a sales office in the Gateway sales district, that Vector is entitled to an offset or credit for monies paid under the Agreement, and that they have failed to mitigate their damages, if any, by failing to make reasonable efforts to limit or replace their alleged damages and their damages are speculative.

AMOUNT IN CONTROVERSY (US DOLLARS)   **$530,000.00**

<u>Exhibit 5</u>

 # Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach two copies of entire agreement.*

---

ARBITRATION PROVISION LOCATION

Paragraph 12 of the Independent Contractor Division Manager Agreement entered into between Vector and The JWD Group, LLC on August 17, 2016.

---

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.*

## REQUEST FOR HEARING

REQUESTED LOCATION    St. Louis, MO

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See: Comprehensive Rule 16.1*

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

SIGNATURE    *James R. Grasso*    DATE  6/23/2017

NAME (PRINT/TYPED)    James R. Grasso

---

JAMS Demand for Arbitration Form                                                    Page 4 of 7

**Exhibit 5**



# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims</u>.

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☐ <u>YES</u>, this is a CONSUMER ARBITRATION.

☑ <u>NO</u>, this is not a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1.  The contract is with a consumer party, as defined in these standards;
2.  The contract was drafted by or on behalf of the non-consumer party; and
3.  The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1.  An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2.  An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3.  An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4.  An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000     ☐ $100,000 to $250,000     ☐ More than $250,000     ☐ Decline to State

## WAIVER OF ARBITRATION FEES

In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

---

<u>Exhibit 5</u>

 **Demand for Arbitration Form** (continued)

Instructions for Submittal of Arbitration to JAMS

## RESPONDENT #2 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| | |
|---|---|
| RESPONDENT NAME | Justin Donald |
| ADDRESS | 9204 Shortridge Avenue |
| CITY | St. Louis | STATE MO | ZIP 63144-2148 |
| PHONE | FAX | EMAIL |

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | S. Todd Hamby, Esq. |
| FIRM/COMPANY | Carmody MacDonald P.C. |
| ADDRESS | 120 S. Central Avenue, Suite 1800 |
| CITY | St. Louis | STATE MO | ZIP 63105-1705 |
| PHONE | 314-854-8630 | FAX 314-854-8660 | EMAIL sth@carmodymacdonald.com |

## RESPONDENT #3 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| | |
|---|---|
| RESPONDENT NAME | |
| ADDRESS | |
| CITY | STATE | ZIP |
| PHONE | FAX | EMAIL |

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | |
| FIRM/COMPANY | |
| ADDRESS | |
| CITY | STATE | ZIP |
| PHONE | FAX | EMAIL |

Exhibit 5

DocuSign Envelope ID: ACC875C1-DA94-4309-BC7F-247CEE87EEB4



**Marketing Corporation**

## INDEPENDENT CONTRACTOR DIVISION MANAGER AGREEMENT (Incorporated DVM's)

THIS AGREEMENT, effective September 2016, between VECTOR MARKETING CORPORATION, a Pennsylvania corporation with its principal office at 1116 East State Street, Olean, New York 14760 (hereinafter "Vector") and _____THE JWD GROUP, LLC_____ ("Company") with an address at __11641 Olive Blvd_____ in _CREVE COEUR_____ MO (here after collectively "DVM").
WHEREAS Vector desires to engage DVM as an Independent Contractor to serve as Division Manager for Vector and DVM desires to be so engaged.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is agreed by and between Vector and DVM as follows:

1. Vector hereby contracts with DVM as a direct sales and marketing representative to solicit orders for Vector's products on an in-home basis or otherwise than in a permanent retail establishment. DVM will be described as a Division Manager of Vector. DVM hereby accepts the terms of this Agreement and agrees to solicit orders for Vector's products subject only to the provisions contained herein and in the current Sales Rep Agreement, a copy of which the DVM possesses. For all purposes, the parties intend that DVM shall be construed as an independent contractor. DVM will not be treated as an employee with respect to such services for federal, state, or local tax purposes, including but not be limited to unemployment compensation or worker's compensation taxes, or for any other purpose. DVM shall not at any time represent himself/herself to be an employee of Vector.

2. The term of this Agreement shall commence on May 1, 2016, and terminate on August 31, 2017, and may be renewed by the execution of a new written agreement.

3. In addition to soliciting orders for Vector's products, DVM shall be responsible for actively recruiting Vector Sales Representatives (hereinafter "Sales Reps") on a weekly basis, from DVM's office in _____CREVE COEUR_____ MO _____, which DVM will establish and maintain over the full term of this agreement. In general, DVM shall provide training and motivation to such recruits in relation to the direct sales activities within DVM's office. It is understood that all expenses incurred by DVM to provide services are DVM's full and complete responsibility and that DVM shall have no power or authority to incur or create any liability or obligation of any kind in the name of the company. DVM understands and accepts that Vector from time to time may apply promotional expense charges to DVM's commission account including, but not limited to, charges for minimum incentive and fast start expenses. At no time shall DVM have authority to approve sales orders, collect accounts receivable, or authorize customer credit. DVM agrees to adhere to the Vector Code of Ethics, Standards for Advertising, and all applicable state and/or federal laws in the performance of services under this agreement.

4. In consideration of the services provided under this Agreement, Vector shall pay commissions to DVM on the direct sales of its product as follows:
   a. **Personal Sales Volume Commissions.** For C.P.O. sales made personally by DVM, a commission of 35% on approved orders that are shipped to and retained by the customer, with no minimum monthly sales required.
   b. **Volume Commissions.** Weekly volume commissions on C.P.O. sales of Vector's products by Sales Reps launched in DVM's Pilot office after December 25,2014, based on approved orders that are shipped to and retained by the customer, not including taxes or shipping costs at the following rates:

| Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % | Sales Rep Career Sales | DVM Commission % |
|---|---|---|---|---|---|
| $0-1000 | 25% | $ 1,001 – 3,000 | 20% | $ 3,001 – 6,000 | 15% |
| $ 6,001 – 150,000 | 10% * | $ 150,001+ | 5% * | | |

*For reps launched prior to December 25, 2014, the override for over $55,000 Rep CPO Sales will be 5%

   c. **Branch Office Sales.** DVM is entitled to a 5% commission on CPO by Sales Reps from Branch offices directly associated with DVM's Pilot Office where the Branch Office has no District Office affiliation, except that no commission shall be paid on sales by any rep affiliated with a Branch Office who has achieved over $20,000 Career CPO Sales.
   d. **Division Overrides.** DVM is also entitled to a 3% commission on sales by Sales Reps associated with all offices within DVM's division.
   e. **Incentive Commissions.** DVM shall be eligible for such other incentive commissions as are offered from time to time by Vector to its Division Managers.
   f. **Changes to Commission and Incentive Commission Schedules.** Vector retains the right to modify the foregoing commission structures contained in this Paragraph "4" from time to time, but only to the extent it modifies the same for Division Managers generally.
   g. **C.P.O. Sales.** C.P.O. sales are defined as the product sales amount, based on approved customer orders, upon which commissions shall be paid by Vector to sales reps. Typically the "sales amount" shall consist of the cash sale price less the point value of bonus items and shall not include associated taxes, fees, or shipping costs.

5. DVM shall maintain necessary levels of General Liability & Property Insurance during the term of this Agreement for the protection of DVM's business, as may be required by DVM's lease and in amounts adequate to cover the DVM's business property including but not limited to unpaid Sample Kits in the possession of DVM.

6. During the term of this Agreement, DVM shall be authorized to use the name "Vector Marketing" as a part of DVM's business trade name or style while rendering service under this Agreement, but not thereafter. DVM shall also be authorized to refer to himself/herself as an authorized distributor of "CUTCO" products during the Agreement term. This is a grant in connection with the sales efforts described above. The trade names, trademarks, service names and service marks for "CUTCO" and "Vector" are owned by CUTCO Corporation. The use of such names or marks shall only be permitted for the sale of product on a direct face-to-face in-home basis. The use of these corporate properties for any other purpose or in any electronic media including, but not limited to, the Internet is prohibited without prior written approval. To apply for approval, the DVM shall send a written proposal to the attention of the Legal Affairs Manager at the administrative office in Olean. In no event shall DVM be authorized to use the name "Vector Marketing Corporation" or "CUTCO Cutlery Corporation" in any medium, including but not limited to business leases, business cards, directories, stationery, advertisements, phone listings, bank accounts, or any electronic media (e.g., Internet).

<u>Exhibit 5</u>

DocuSign Envelope ID: ACC875C1-DA94-4309-BC7F-247CEE87EEB4

7. It is understood that during the term of this Agreement, DVM will have access to and may become familiar with confidential or proprietary information which is owned by Vector Marketing Corporation or its affiliates and used in the operation and/or development of their business. It is understood that the terms of this Agreement themselves constitute "confidential information" hereunder. DVM shall not disclose any of said confidential information to any individual or entity whatsoever, directly or indirectly, nor use said confidential information in any way, during the term of this Agreement, or thereafter, except as required in the course of providing services hereunder. Such confidential proprietary information shall include but not be limited to customer lists, the content of Vector's private websites, lists of recruits or candidates, and Vector's internet advertising, direct mail, or personal recruiting programs.

8. During the term of this Agreement and for a period of one (1) year thereafter, DVM shall not solicit Vector Division Managers, District Managers, Branch Managers, Assistant Managers and/or Sales Representatives to participate directly or indirectly with any other business activity, nor, in particular, with any other direct selling activity, nor will DVM participate directly or indirectly with any other business which manufactures, promotes, and/or sells products which are the same or substantially similar in intended use or characteristics to those manufactured and/or sold by Vector and affiliates, without the prior written consent of Vector.

9. This agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

10. All notices, requests, demands and other communication hereunder or with respect hereto shall be in writing and shall be deemed to have been duly given upon being delivered, faxed, emailed or if mailed (postage prepaid), shall be deemed to have been given six (6) days after such mailing, as follows:

a. If to DVM, to:                                                    b. If to Vector, to:   Vector Marketing Corp.
11641 Olive Blvd                                                                          PO Box 1228
CREVE COEUR              MO        63141-7001                                              1116 East State St.
Or to such other address as either party hereto may furnish to the other in writing.      Olean, New York 14760
                                                                                          Att: President/ COO

11. Vector reserves the right to terminate this Agreement for good cause. Good cause shall include, but not be limited to, breach of contract, lack of performance by DVM, violation of law, mishandling of customer money, submitting bad checks, and falsifying reports, records, or other information, and a change in the ownership and/or operations of DVM.

12. The DVM and the Company further agree that if any dispute of any kind arises between them which they are unable to resolve themselves, they will submit such dispute to binding, individual, non-class/non-representative/non-collective arbitration as their sole and exclusive remedy. By agreeing to arbitration, both parties understand and agree that any dispute between them will be resolved by a neutral third person outside of court and that they are waiving their rights to sue in a court of law and to have a jury trial regarding such disputes. The disputes that will be arbitrated include but are not limited to claims or controversies arising out of, related to, or resulting from the alleged breach of this Agreement, tort, contract, or statutory claims for wages, compensation, expense reimbursement, interest, liquidated damages, civil penalties, attorney fees or any other right or remedy under state or federal law related to this Agreement or to services hereunder, equitable or otherwise, but not including claims which are excluded from arbitration by applicable state or federal law.

The arbitration will be conducted by the Judicial Arbitration and Mediation Services (JAMS) under its Comprehensive Arbitration Rules and Procedures. If JAMS does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the arbitration will be conducted by and under the Commercial Arbitration Rules of the American Arbitration Association (AAA). If AAA does not offer arbitration within 100 miles of the place where this Agreement was signed by the DVM, then the parties shall select an arbitrator and conduct the arbitration in the manner provided in the JAMS Comprehensive Arbitration Rules and Procedures.

The arbitrator shall have the authority to resolve all disputes and order all remedies that would be available to the parties if the dispute between them had been commenced in a court of law. The arbitrator shall issue a written arbitration decision and award that will be final and binding and on which judgment may be entered in any court of competent jurisdiction. The arbitrator shall not have the authority to join or consolidate the claims of more than one person or to hear or preside over any form of representative, collective, or class proceeding. The company shall pay all costs of the arbitration other than any filing fees in such amounts as the DVM would have incurred to file a claim in a court of law. The parties will pay their own attorney fees, except as otherwise provided by law. This provision shall be governed by the Federal Arbitration Act and shall survive the termination of this Agreement.

13. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their legal representatives, successors and assigns, but may not be assigned by DVM without the prior written consent of Vector. If any terms, conditions, clause, or provision of this Agreement shall be determined by a court of competent jurisdiction to be void or invalid at law, or for any other reason, then only that term, condition, clause, or provision as is determined to be void or invalid shall be stricken from the Agreement, and this Agreement shall remain in full force and effect in all other respects.

Vector reserves the right to amend or revise the terms of this agreement, except the arbitration requirements in paragraph 12, upon 30 days written notice to all division managers. IN WITNESS WHEREOF, both parties sign and agree to all the terms as described above, on the effective date noted below.

DVM Corporation Name THE JWD GROUP, LLC                                    VECTOR MARKETING CORPORATION

DVM Name Justin Donald

DVM Signature Justin Donald          8/17/2016          By John Whelpley          8/17/2016
92C63FE669F1473...                   Date               John Whelpley, President/COO          Date



VECTOR™
Marketing Corporation

Revised: 1/25/2016

Exhibit 5

# Carmody MacDonald

Carmody MacDonald P.C.
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105-1705
314-854-8600   Fax 314-854-8660
www.carmodymacdonald.com

Colin M. Luoma
cml@carmodymacdonald.com
Direct Dial: (314) 854-8634

July 7, 2017

**VIA REGULAR U.S. MAIL AND EMAIL**
Mr. James R. Grasso
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203-2887

> **Re:    Vector Marketing Corporation v. The JWD Group, LLC and Justin Donald**

Dear Mr. Grasso:

Please find enclosed a service copy of Respondents The JWD Group, LLC's and Justin Donald's Counterclaim Against Claimant Vector Marketing Corporation, that was filed with JAMS this afternoon in the above-referenced matter.

Very truly yours,

CARMODY MacDONALD P.C.

Colin M. Luoma

Enclosure

cc:    S. Todd Hamby (via e-mail)
       Tina N. Babel (via e-mail)

Exhibit 6

## JUDICIAL ARBITRATION AND MEDIATION SERVICES

VECTOR MARKETING )
CORPORATION, )
        )
     Claimant, )
        )
v. )
        )
THE JWD GROUP, LLC )
        )
and )
        )
JUSTIN DONALD, )
        )
     Respondents. )

### RESPONDENTS THE JWD GROUP, LLC'S AND JUSTIN DONALD'S COUNTERCLAIM AGAINST CLAIMANT VECTOR MARKETING CORPORATION

COME NOW Respondents The JWD Group, LLC ("JWD") and Justin Donald ("Mr. Donald") (JWD and Mr. Donald are collectively, "Respondents") and for their Counterclaim against Claimant Vector Marketing Corporation ("VMC"), hereby state as follows:

### Introduction

1.   Despite Mr. Donald's faithful and loyal commitment to VMC for nearly 20 years, VMC now seeks to punish him for merely *proposing* alternative options for his continued work with VMC. Rather than comply with its obligations under its agreement with Mr. Donald's company, JWD, VMC has instead improperly terminated the agreement without good cause and refused to pay JWD the commissions it is owed under the agreement. Furthermore, VMC has intentionally disrupted JWD's existing business relationships and defamed both JWD and Mr. Donald by publishing false statements about Mr. Donald's relationship and status with VMC. All of these actions are unlawful and only serve to damage Respondents.

Exhibit 6

## Factual Background

2.    VMC is a Pennsylvania corporation with its principal place of business in New York.   It is also the primary sales arm for its parent company, Cutco Corporation ("Cutco"), a direct sales company that sells kitchen cutlery and accessories.

3.    Mr. Donald has worked for VMC for the past 19 years, since he was 18 years-old. He started as a sales representative for VMC, but soon was promoted to a division manager.

4.    During his time as a division manager, Mr. Donald's sales office in Creve Coeur, Missouri consistently outperformed other VMC offices, becoming the # 1 office in the region, a top 3 office nationally and a top 10 division nationally almost every year.

5.    In April 2013, Mr. Donald created JWD to contract with VMC and serve as a division manager for VMC.

6.    On or about August 17, 2016, JWD and VMC entered into a Division Manager Agreement (the "Agreement"), whereby JWD agreed to solicit orders for VMC products and actively recruit sales representatives for VMC.  In exchange, VMC agreed to pay commissions to JWD on its direct sales of Cutco products, in accordance with the terms of the Agreement.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

7.    The term of the Agreement is from May 1, 2016 to August 31, 2017.

8.    Pursuant to the Agreement, VMC only had the right to terminate the Agreement for "good cause." Good cause under the Agreement was defined as including "breach of contract, lack of performance by [JWD], violation of law, mishandling of customer money, submitting bad checks, and falsifying reports, records, or other information, and a change in the ownership and/or operations of [JWD]."

2

Exhibit 6

9.     In or around January 2017, Mr. Donald discussed several propositions with VMC's management regarding the future of JWD's sales office in Creve Coeur, Missouri.  During these conversations Mr. Donald made clear that he wanted to continue working with VMC and simply wanted to discuss alternative options.

10.     Following the January 2017 discussion, and despite Mr. Donald's clear representations to VMC's management, VMC began falsely informing his peers and JWD's sales staff that, effective immediately, Mr. Donald stepped down from his position with VMC and JWD as a Division Manager and that JWD would no longer serve as Division Manager for VMC.  VMC also refused to allow Mr. Donald to attend Vector events, transferred staff out of JWD's office, and transferred JWD's territory zip codes to another office.

11.     Upon information and belief, VMC's management also made statements to JWD's sales staff and other individuals that Mr. Donald was soliciting VMC personnel and recruiting them to work with him on a new venture.

12.     Later, VMC took the position that JWD was no longer operating under the Agreement because JWD did not recruit any sales representatives in March, despite the fact that VMC assigned five of JWD's recruits to another office.

**Count I – Breach Of Contract**
**[On Behalf of JWD]**

13.     Respondents incorporate Paragraphs 1 through 11 as though fully set forth herein.

14.     The Agreement is a valid and enforceable contract between JWD and VMC and is supported by sufficient consideration.

15.     JWD has performed all of its obligations under the Agreement, including but not limited to, soliciting orders for VMC products and actively recruiting sales representatives for VMC.

3

<u>Exhibit 6</u>

16.     VMC has breached the Agreement by, among other things, failing to pay commissions to JWD that are due and owing under the Agreement, prohibiting JWD from performing under the Agreement and terminating the Agreement without good cause.

17.     JWD has been and continues to be damaged by VMC's material breach of the Agreement in an amount to be determined in this arbitration proceeding.

WHEREFORE, Respondent The JWD Group, LLC respectfully requests that an Award be entered in its favor and against Claimant Vector Marketing Corporation on Count I for its damages in an amount to be determined in this proceeding, for its costs to obtain relief in this action including reasonable expenses and attorneys' fees, for all interest to which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

### Count II – Tortious Interference with Business Expectancy
### [On Behalf of JWD]

18.     Respondents incorporate Paragraphs 1 through 16 as though fully set forth herein.

19.     JWD had a reasonable business expectancy of obtaining orders for VMC's products through the term of the Agreement.

20.     VMC knew of and was aware of the prospective business relationships between JWD and its customers.

21.     VMC has intentionally interfered with JWD's relationships by intentionally and falsely representing to JWD's employees and peers that Mr. Donald was no longer working for VMC.

22.     VMC intentionally acted in a manner to interfere with, induce or coerce the breach of JWD's business expectancies.

23.     VMC's actions were without justification.

4

Exhibit 6

24.     As a direct and proximate cause of VMC's intentional actions, JWD has lost profits and revenue from potential customers.

25.     JWD has been and continues to be damaged by VMC's interference with JWD's business expectancies in an amount to be determined in this arbitration proceeding.

26.     VMC's conduct is outrageous due to its evil motive or reckless indifference to the rights of JWD, thereby justifying an award of punitive damages in an amount to punish VMC and to deter others from like conduct.

WHEREFORE, Respondent The JWD Group, LLC respectfully requests that an Award be entered in its favor and against Claimant Vector Marketing Corporation on Count II for its damages in an amount to be determined in this proceeding, for punitive damages in an amount sufficient to punish Claimant and deter others from similar conduct, for its costs to obtain relief in this action including reasonable expenses and attorneys' fees, for all interest to which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

## Count III – Defamation
### [On Behalf of JWD and Mr. Donald]

27.     Respondents incorporate Paragraphs 1 through 25 as though fully set forth herein.

28.     VMC made numerous defamatory statements identifying JWD and Mr. Donald through email and verbal communications.

29.     The defamatory statements included, but are not limited to, statements by VMC's management that Mr. Donald had stepped down from his position with VMC and that JWD would no longer serve as Division Manager for VMC.   These defamatory statements were communicated to JWD's sales staff and Mr. Donald's peers.

5

Exhibit 6

30.     Upon information and belief, VMC's management also made false statements to third-parties that Mr. Donald was soliciting VMC personnel and recruiting them to work with him on a new venture.

31.     The published statements are false.

32.     VMC published such statements with the knowledge they were false and/or it acted with reckless disregard for whether the statements were true or false at a time when VMC had serious doubt about whether they were true.

33.     The statements are assertions of defamatory facts and/or necessarily imply the existence of undisclosed defamatory facts.

34.     The false statements are not privileged.

35.     Such statements were read or heard by Mr. Donald's peers, JWD's staff and other members of the public.

36.     Such defamatory statements exposed Respondents to contempt and ridicule.

37.     Respondents' reputations are being harmed and have been damaged as a direct result of the false statements alleged herein.

38.     VMC's conduct is outrageous due to its evil motive or reckless indifference to the rights of Mr. Donald and JWD, thereby justifying an award of punitive damages in an amount to punish VMC and to deter others from like conduct.

WHEREFORE, Respondents Justin Donald and The JWD Group, LLC respectfully request that an Award be entered in their favor and against Claimant Vector Marketing Corporation on Count III for their damages in an amount to be determined in this proceeding, for punitive damages in an amount sufficient to punish Claimant and deter others from similar conduct, for its costs to obtain relief in this action including reasonable expenses and attorneys' fees, for all interest to

6

Exhibit 6

which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

Respectfully submitted,

CARMODY MACDONALD P.C.

By:    _/s/ S. Todd Hamby_____
        S. Todd Hamby #40367MO
        Tina N. Babel #58247MO
        Colin Luoma #65000MO
        120 South Central Avenue, Suite 1800
        St. Louis, Missouri 63105-1705
        314-854-8600 Telephone
        314-854-8660 Facsimile
        sth@carmodymacdonald.com
        tnb@carmodymacdonald.com
        cml@carmodymacdonald.com

*Attorneys for Respondents*

7

Exhibit 6

JUDICIAL ARBITRATION AND MEDIATION SERVICE

VECTOR MARKETING CORPORATION,

Claimant,

and

THE JWD GROUP, LLC and
JUSTIN DONALD,

Respondents.

## VECTOR MARKETING CORPORATION'S
## RESPONSE TO RESPONDENTS' COUNTERCLAIMS

Vector Marketing Corporation ("Vector"), by its attorneys Phillips Lytle LLP, responding to Respondents' counterclaim, states as follows:

### Response to Count I - Breach of Contract

1. Vector denies the counterclaim in Count I of Respondents' Counterclaim Against Claimant Vector Marketing Corporation alleging that it breached the Independent Contractor Division Manager Agreement ("Agreement") entered into by and between The JWD Group, LLC and Vector on or about August 17, 2016.

### Response to Count II - Interference with Business Expectancy

2. Vector denies the counterclaim in Count II of Respondents' Counterclaim Against Claimant Vector Marketing Corporation alleging that it tortuously interfered with the business expectancy of The JWD Group, LLC.

Exhibit 7

## Response to Count III – Defamation

3.    Vector denies the counterclaim in Count III of Respondents' Counterclaim Against Claimant Vector Marketing Corporation alleging that it defamed The JWD Group, LLC and/or Justin Donald.

### First Affirmative Defense to Respondents' Counterclaims

4.    The JWD Group, LLC anticipatorily breached the Agreement.

### Second Affirmative Defense to Respondents' Counterclaims

5.    Vector had good cause to terminate the Agreement.

### Third Affirmative Defense to Respondents' Counterclaims

6.    Respondents' counterclaims are barred by the doctrines equitable estoppel and unclean hands.

### Fourth Affirmative Defense to Respondents' Counterclaims

7.    Vector's actions were justified.

### Fifth Affirmative Defense to Respondents' Counterclaims

8.    Vector's statements were truthful.

### Sixth Affirmative Defense to Respondents' Counterclaims

9.    Vector's statements were privileged.

### Seventh Affirmative Defense to Respondents' Counterclaims

10.    Respondents have failed to mitigate their damages.

### Eighth Affirmative Defense to Respondents' Counterclaims

11.    Respondents may not recover punitive damages.

### Ninth Affirmative Defense to Respondents' Counterclaims

12.    Respondents may not recover attorneys' fees.

- 2 -

Exhibit 7

### Tenth Affirmative Defense to Respondents' Counterclaims

13.    Respondents' defamation counterclaim fails to state a cause of action.

### Eleventh Affirmative Defense to Respondents' Counterclaims

14.    Respondents' tortious interference counterclaim fails to state a cause of action.

### Twelfth Affirmative Defense to Respondents' Counterclaims

15.    The JWD Group, LLC terminated the Agreement.


PHILLIPS LYTLE LLP


By _____
        James R. Grasso
Attorneys for Vector Marketing Corporation
One Canalside
125 Main Street
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400

- 3 -

Exhibit 7



# APPOINTMENT OF ARBITRATOR

NOTICE TO ALL PARTIES                                            July 21, 2017

     Re:    <u>Vector Marketing Corp. / JWD Group, LLC and Justin Donald</u>
             Reference #:  1340014653

Dear Parties:

Hon. Geraldine Soat Brown (Ret.) has been mutually agreed by counsel as Arbitrator in the above-referenced matter. In accordance with the JAMS Comprehensive Rules no party may have *ex-parte* communications with the Arbitrator. Any necessary communication with the Arbitrator must be initiated through the case manager.

The Arbitrator will bill in accordance with the enclosed Fee Schedule. Each party will be assessed a pro rata share of all fees and expenses, unless JAMS is notified otherwise by the arbitrator or parties. Under appropriate circumstances, the Arbitrator may award against any party JAMS' fees and expenses. JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in the arbitration.

Enclosed is a preliminary retainer invoice. Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator. Your new contact person for this file is Michael McCants, Case Manager to Hon. Geraldine Soat Brown (Ret.).

Michael McCants
71 South Wacker Dr. Suite 3090
Chicago, IL 60606
Phone: 312-655-9199
Fax: 312-655-0643
Email: mmccants@jamsadr.com

Contact me at 312-655-9193 or jwilkin@jamsadr.com if you have questions.

Sincerely,

Juliana C. Wilkin
Case Manager
jwilkin@jamsadr.com

Enclosure

Exhibit 8

Electronically Filed - St Louis County - July 26, 2017 - 02:24 PM

**17SL-CC02744**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

JUSTIN DONALD, individually and )
on behalf of all others similarly situated, )
)
        Plaintiff, )
)
) Cause No.
)
vs. ) Division No.
)
VECTOR MARKETING CORPORATION, )
)
Serve at:   CT Corporation System )
        Registered Agent ) JURY TRIAL DEMANDED
        600 N. 2nd Street, Suite 401 )
        Harrisburg, Pennsylvania 17101 )
)
        Defendant. )

## COLLECTIVE ACTION PETITION

### Introduction

1.    To avoid the protections afforded to employees by federal and state law, Defendant Vector Marketing Corporation ("Vector") willfully misclassifies its Division Managers, including Plaintiff Justin Donald ("Donald"), as independent contractors, and, among other things, has failed to properly pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Missouri Minimum Wage Law ("MMWL"), § 290.500 RSMo. *et seq.*

### Parties

2.    At all times relevant to this matter, Donald was a resident of St. Louis County, Missouri, where he worked out of Vector's St. Louis County office as its Division Manager.[1]

3.    Donald's FLSA claim is filed as a collective action under 29 U.S.C. § 216(b), and is brought by and on behalf of all persons who are or have been at some time employed by Vector

---

[1] Donald currently resides in Travis County, Texas.

<u>Exhibit 9</u>

Electronically Filed - St Louis County - July 28, 2017 - 02:24 PM

as a Division Manager in the three-year period preceding the filing of this Petition (the "Class Period"). These similarly-situated individuals are collectively referred to as "Class Members" or the "Class."

4.   Vector is a Pennsylvania corporation that does business nationwide, including in St. Louis County. Vector employed Donald and its other Division Managers within the meaning of the FLSA and the MMWL despite improperly labeling them as independent contractors.

## Jurisdiction and Venue

5.   This Court has subject matter jurisdiction over this action because state and federal courts have concurrent jurisdiction under the FLSA and this Court has original jurisdiction over Donald's MMWL claim.

6.   This Court has personal jurisdiction over Vector because it regularly conducts business in Missouri and it employed Donald as a Division Manager in Missouri.

7.   Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010.

## Facts

8.   Vector is the primary sales arm of its parent company, Cutco Corporation ("Cutco"), a direct sales company that sells kitchen cutlery and accessories throughout the nation, including in St. Louis County.

9.   Vector sells Cutco products to the general public directly through an army of Sales Representatives, whom it also classified as independent contractors. These Sales Representatives are "managed" by so-called Assistant Managers and Branch Managers in Vector's various local offices, who likewise are classified by Vector as independent contractors. Above Assistant Managers and Branch Managers are District Managers, who operate permanent sales offices within a specified geographic location and are also labeled as independent contractors. At the next level

2

Exhibit 9

Electronically Filed - St Louis County - July 28, 2017 - 02:24 PM

are Vector's Division Managers, who oversee a specific geographic sales area, including several of Vector's district and branch offices, and, as noted, are classified by Vector as independent contractors. Division Managers report directly to Vector's Regional Managers, who in-turn report to Vector's CEO. Ironically, Regional Managers are classified by Vector as bona fide employees.

10. Upon information and belief, Vector employs approximately 36 to 42 Division Managers, all of whom it has improperly classified as independent contractors.

11. From approximately June 1998 to March 2017, Vector promoted Donald from Sale Representative to Assistant Manager to Branch Manager to District Manager and, most recently, to Division Manager. Vector trained Donald for his various management roles within Vector.

12. For the past twelve (12) years, Donald has been employed as a Division Manager, working out of Vector's office in St. Louis County. In this role, Donald oversaw the Gateway Division (Southern Illinois; Missouri, Kansas, Iowa, and Nebraska), including anywhere from 15 to 30 of Vector's district and branch offices each year. He typically worked 60 hours per week or more. Upon information and belief, other Division Managers worked similar hours.

13. Vector's Division Managers have at least the following indicia of an employment (not an independent contractor) relationship with Vector:

   a. Vector retains the right to control, and in fact does control, the manner and means by which the Division Managers accomplish their work;

   b. Vector requires Division Managers to live in certain geographical areas and are instructed where to operate their offices;

   c. Division Managers are instructed by Vector on how to allocate their time and how to perform their tasks;

   d. Vector has the right to hire, fire and/or discipline any of its Division Managers, and in fact did fire Donald and several other Division Managers;

3

Exhibit 9

Electronically Filed - St Louis County - July 28, 2017 - 02:24 PM

e.   Division Managers receive training from Vector on how to manage and oversee their sales force;

f.   Division Managers are consistently told by Vector to not engage in business that is distinct from that of Vector;

g.   Division Managers are required by Vector to attend weekly conference calls, quarterly regional meetings and semi-annual and annual national meetings. The expenses incurred by the Division Managers to travel to and attend these meetings are fully paid for by Vector;

h.   Division Managers received a weekly pay check from Vector in varying amounts based on the individual Division Manager's recruiting and sales volume for that pay period;

i.   Vector commonly assigned extra work to Division Managers, above and beyond what is set forth in their so-called "Independent Contractor" agreements;

j.   The services provided by the Division Managers are integral to Vector's sales model, which relies on Division Managers to recruit and train Sale Representatives;

k.   Vector instructs its Division Managers to work out of their local office; and

l.   Vector requires its Division Managers to submit daily and weekly reports to upper-level management.

14.   To avoid providing Division Managers, including Donald, with the benefits and protections of the FLSA and Missouri law, Vector has willfully and uniformly misclassified them as "independent contractors" rather than employees.

15.   Because of this misclassification, Vector failed to pay Donald and other Class Members any overtime compensation under the FLSA and/or MMWL.

4

Exhibit 9

Electronically Filed - St Louis County - July 28, 2017 - 02:24 PM

## Collective Action Allegations

16.    Donald brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the putative Class Members. Donald's consent to this collective action is attached hereto as Exhibit A.

17.    Donald is and has been a member of the proposed Class described herein.

18.    The FLSA claim may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

19.    Disposition of the FLSA claim in a collective action will benefit all parties and the Court.

20.    Plaintiff and the Class Members are similarly situated in that they have the same or similar primary job duties as Division Managers and are all subject to Vector's same policies treating them as independent contractors. Additionally, as with Donald, Class Members are not paid overtime in accordance with the FLSA.

21.    A collective action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein. The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Class which would or may establish incompatible standards of conduct for Vector. This would create a risk of adjudications with respect to individual members of the proposed Class which would, as a practical matter, be dispositive of the interests of other members of the proposed Class not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

22.    Donald is aware that Vector's illegal policies or practices have been imposed upon Class Members. Like Donald, the Class Members are employed by Vector as Division Managers.

5

Exhibit 9

23.    Therefore, Donald, individually and on behalf of other similarly-situated employees, seeks relief on a collective basis challenging Vector's above-described FLSA violations. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Vector, and potential class members may easily and quickly be notified of the pendency of this action.

24.    Class Members should be notified of this lawsuit and given the opportunity to opt-in if they so desire.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT

25.    Donald reasserts and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set out herein.

26.    At all times relevant to this action, Donald and the Class Members have been entitled to the rights, protections, and benefits provided under the FLSA.

27.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206-207.

28.    Vector is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its Division Managers are engaged in commerce.

29.    Vector violated the FLSA by failing to pay its Division Managers at least the required minimum wage and/or overtime pay for hours worked in excess of forty (40) hours per week. It has also failed to keep accurate records of all hours worked by its Division Managers.

6

Exhibit 9

30. Donald and the Class Members have been subjected to Vector's unlawful, nationwide practices whereby Vector misclassifies its Division Managers as independent contractors, when they are in fact employees, and Vector fails to compensate its Division Managers in accordance with the FLSA. These policies, in violation of the FLSA, have been applied to Donald in St. Louis County and to other Class Members throughout the nation.

31. Donald and all similarly-situated employees are entitled to damages equal to the payment of minimum wages and/or mandated overtime premium pay within the three years preceding the filing of this Complaint, because Vector acted willfully and knew or showed reckless disregard of whether their conduct was prohibited by the FLSA.

32. Vector has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Donald and the other Class Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages and/or overtime pay described pursuant to the FLSA.

33. Vector is also liable pursuant to 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Donald, and other Class Members, demand judgment against Vector on Count I of Donald's Complaint and pray that this Court:

        a. Issue notice to all similarly-situated employees of Vector informing them of their right to file consents to join the FLSA portion of this action;

        b. Award Donald and all similarly-situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

        c. Award Donald and all similarly-situated employees pre-judgment and post-judgment interest as provided by law;

Exhibit 9

Electronically Filed - St Louis County - July 26, 2017 - 02:24 PM

    d. Award Donald and all similarly-situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA; and

    e. Award Donald and all similarly-situated employees such further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE MISSOURI MINIMUM WAGE LAW

34. Donald reasserts and incorporates by reference the allegations contained in paragraphs 1 through 33 as though fully set out herein.

35. Donald has been subjected to Vector's unlawful, nationwide practice whereby Vector misclassifies its Division Managers are independent contractors, when they are in fact employees, and Vector fails to compensate its Division Managers in accordance with MMWL. These policies, in violation of the MMWL, have been applied to Donald in St. Louis County.

36. Vector has violated Missouri law, in relevant part, by failing to pay minimum wages and/or overtime pay owed to Donald as required by the MMWL.

37. Further, Donald is entitled to recover liquidated damages in an amount equal to their compensatory damages, attorneys' fees, and costs, pursuant to Mo. Rev. Stat. § 290.527.

WHEREFORE, Donald demands judgment against Vector on Count II of Donald's Complaint and pray that this Court:

    a. Award Donald compensatory and liquidated damages under and Mo. Rev. Stat. § 290.527;

    b. Award Donald pre- and post-judgment interest as provided by law;

    c. Award Donald attorneys' fees and costs as allowed by Mo. Rev. Stat. § 290.527;

    d. Award Donald such other relief as the Court deems just and proper.

8

Exhibit 9

Electronically Filed - St Louis County - July 25, 2017 - 02:24 PM

Respectfully submitted,

CARMODY MACDONALD P.C.

By:    /s/ S. Todd Hamby
       S. Todd Hamby #40367
       Edwin C. Ernst, IV #57521
       Colin M. Luoma #65000
       120 South Central Avenue, Suite 1800
       St. Louis, Missouri 63105-1705
       314-854-8600 Telephone
       314-854-8660 Facsimile
       sth@carmodymacdonald.com
       ece@carmodymacdonad.com
       cml@carmodymacdonald.com

*Attorneys for Donald Justin Donald individually
and on behalf of all others similarly situated*

Exhibit 9



IN THE MATTER OF: )
)
Vector Marketing Corp., )
)
        Claimant, )
)
vs. )    CASE NO. 1340014653
)
JWD Group, LLC, Justin Donald, )
)
      Respondent. )
)
)
)

## REPORT OF PRELIMINARY TELECONFERENCE AND
## SCHEDULING ORDER NO. 1

      COUNSEL ARE REQUESTED TO CAREFULLY REVIEW THIS ORDER AND REPORT ANY CORRECTIONS TO THE CASE MANAGER.

      A PRELIMINARY TELECONFERENCE WAS CONDUCTED IN THIS MATTER ON **August 31, 2017 at 1:00 p.m. (CT),** PURSUANT TO WRITTEN NOTICE, AND THE FOLLOWING ORDER IS MADE RESPECTING THE CONDUCT OF THIS ARBITRATION:

1.    AGREEMENT TO ARBITRATE:
      The parties have agreed to arbitrate this matter pursuant to ¶ 12 of the Independent Contractor Division Manager Agreement dated August 17, 2016.

2.    PLEADINGS AND ARBITRABILITY:
      Vector Marketing Corporation ("Vector") filed a demand for arbitration on June 23, 2017.  JWD Group, Inc. ("JWD") and Justin Donald  filed a counterclaim against Vector, and Vector responded to that counterclaim.  The parties agree that all claims and counterclaims are arbitrable.

3.    APPLICABLE LAW:
      Pursuant to ¶ 12 of the Agreement, the arbitration shall be administered in accordance with JAMS Comprehensive Arbitration Rules (effective July 1, 2014).

1

**Exhibit 10**

Pursuant to ¶ 9 of that Agreement, the governing substantive law is that of the Commonwealth of Pennsylvania.

4.      MEDIATION:
        The parties wish to explore the possibility of settlement of their dispute through mediation with a JAMS neutral.

5.      EXCHANGE OF INFORMATION AND DISCOVERY:
        For purposes of the arbitration and in order to facilitate possible settlement, the parties will exchange information and documents relevant to the claims and defenses. Such information may include Vector's profit and revenue for the past year and a reasonable time before, limited to Donald's division; and JWD's and Donald's net income for the past year, such as audit reports or Donald's tax return Schedule C.  All such information and documents shall be held **confidential** and used solely for the mediation and arbitration of this dispute.
        No later than September 15, 2017, counsel for the parties will confer to discuss the information to be exchanged and arrange a schedule for document production, as well as any other discovery they believe at this time will be necessary.  Any disputes about discovery will be decided by the Arbitrator.

6.      ARBITRATION PROCEDURE:
        In light of the parties' interest in mediation, they agree that it is premature to set a hearing date.  At the next telephone conference on October 10, 2017, counsel will report on the progress of information exchange and scheduling the mediation.

7.      COMMUNICATION/FILING OF DOCUMENTS
        The arbitrator and case manager can be reached as follows:

>       **Michael McCants**
>       **JAMS**
>       **71 S. Wacker Drive**
>       **Suite 3090**
>       **Chicago, IL  60606**
>       **Ph. 312.655.9199**
>       **Fx. 312.655.0644**
>       mmccants@jamsadr.com

>       **Hon. Geraldine Soat Brown (Ret.)**
>       **JAMS**
>       **71 S. Wacker Drive**
>       **Suite 3090**
>       **Chicago, IL  60606**
>       **Ph. 312.655.0555**
>       **Fx. 312.655.0644**
>       gsbrown@jamsadr.com

Exhibit 10

3

    a.   Submissions should be filed electronically via e-mail to all parties, the case manager and the arbitrator.  Hard copies should also be sent directly to the arbitrator as indicated above.

    b.   All correspondence from JAMS will be served via email only unless otherwise requested by the parties.

8      **STATUS TELECONFERENCE**: A status teleconference is scheduled **for October 10, 2017 at 10:00 a.m. (CT).**  Participants shall dial 1-877-874-5267, wait for the operator, and request the Judge Brown call.

**Dated: August 31, 2017**

/s/  Geraldine Soat Brown
**Hon. Geraldine Soat Brown (Ret.)**
JAMS Arbitrator

3

**Exhibit 10**

# SERVICE LIST

| | |
|---|---|
| **Case Name:** Vector Marketing Corp. vs. JWD Group, LLC and Justin Donald | **Hear Type:** Arbitration |
| **Reference #:** 1340014653 | **Case Type:** Business/Commercial |
| **Panelist:** Brown, Geraldine Soat , | |

---

## Tina N. Babel

Carmody MacDonald PC
Tina N. Babel
120 S. Central Ave.
Suite 1800
Saint Louis, MO  63105
tnb@carmodymacdonald.com

Respondent
Phone: 314-854-8600
Fax: 314-854-8660

**Party Represented:**
JWD Group, LLC
Justin Donald

## James R. Grasso

Phillips Lytle LLP
James R. Grasso
One Canalside
125 Main Street
Buffalo, NY  14203-2887
JGrasso@phillipslytle.com

Claimant
Phone: 716-847-8400
Fax: 716-852-6100

**Party Represented:**
Vector Marketing Corp.

## S. Todd  Hamby

Carmody MacDonald PC
S. Todd  Hamby
120 S. Central Ave.
Suite 1800
Saint Louis, MO  63105
sth@carmodymacdonald.com

Respondent
Phone: 314-854-8600
Fax: 314-854-8660

**Party Represented:**
JWD Group, LLC
Justin Donald

## Colin M. Luoma

Carmody MacDonald PC
Colin M. Luoma
120 S. Central Ave.
Suite 1800
Saint Louis, MO  63105
cml@carmodymacdonald.com

Respondent
Phone: 314-854-8600
Fax: 314-854-8660

**Party Represented:**
JWD Group, LLC
Justin Donald

*8/31/2017*

*Page 1 of 1*

Exhibit 10

## PROOF OF SERVICE BY E-Mail

Re: Vector Marketing Corp. / JWD Group, LLC and Justin Donald
Reference No. 1340014653

I, Michael McCants, not a party to the within action, hereby declare that on August 31, 2017, I served the attached Scheduling Order No. 1 on the parties in the within action by electronic mail at Chicago, ILLINOIS, addressed as follows:

James R. Grasso Esq.
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY   14203-2887
Phone: 716-847-8400
JGrasso@phillipslytle.com
   Parties Represented:
   Vector Marketing Corp.

S. Todd Hamby Esq.
Colin M. Luoma Esq.
Tina N. Babel Esq.
Carmody MacDonald PC
120 S. Central Ave.
Suite 1800
Saint Louis, MO   63105
Phone: 314-854-8600
sth@carmodymacdonald.com
cml@carmodymacdonald.com
tnb@carmodymacdonald.com
   Parties Represented:
   JWD Group, LLC
   Justin Donald

I declare under penalty of perjury the foregoing to be true and correct. Executed at Chicago, ILLINOIS on  August 31, 2017.

Michael McCants
JAMS
mmccants@jamsadr.com

Exhibit 10